UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**PAUL S. MINOR** | Criminal Docket No. 3:03cr120-HTW-JCS |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT PAUL S. MINOR'S MOTION TO VACATE CONVICTIONS

Defendant Paul S. Minor respectfully submits the following Memorandum of Law in support of his Motion to Vacate Convictions.

### BACKGROUND

In 2003, Mr. Minor was indicted for several offenses, including violations of the honest services fraud statute, 18 U.S.C. § 1346, and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c). The government alleged that Mr. Minor had violated these federal statutes by making campaign-related loans to two Mississippi judges—his co-defendants, Walter Teel and John Whitfield. *United States v. Whitfield*, 590 F.3d 325, 341 (5th Cir. 2009). After a jury trial in 2005, Mr. Minor was acquitted of six counts and a mistrial was declared on the remaining eight counts. *Id.* The government went on to file a third superseding indictment against Mr. Minor and others that incorporated the counts on which a mistrial had been declared. *Id.* at 342.

The third superseding indictment charged 14 counts against Mr. Minor and his co-defendants, including the previous charges of violations of the honest services fraud statute and RICO on which the jury had not rendered a verdict. D.E. 454. The indictment repeatedly

alleged that Mr. Minor engaged in a "scheme . . . to defraud" through, among other things, undisclosed self-dealing and concealment of financial interest. *Id.* For example, the indictment alleged that Mr. Minor violated the honest services fraud statute by "devis[ing] and intend[ing] to devise a scheme and artifice to defraud and deprive the state of Mississippi of its intangible right to the honest services of [Mr. Whitfield], performed free from *deceit*, *bias*, *self-dealing* and *concealment*." *Id.* at 22, ¶ 2 (emphases added) (indictment); *id.* at 24, ¶ 2 (same).

A second jury trial took place in 2007 at which the government again argued that Mr. Minor's campaign loans violated various laws, including the honest services fraud statute and RICO. D.E. 454. At the trial, Mr. Minor proposed three jury instructions that would not have allowed the jury to convict him of bribery-based honest services fraud and other bribery-related offenses unless the jury found that he and his co-defendants had entered into a *quid pro quo* agreement to exchange campaign and other financial support for specific official acts. D.E. 658 (Tr. 4662-75) (Def. Minor's Proposed Jury Instructions 12, 13 & 18). This Court rejected all three of the requested instructions, noting that it was basing its instructions on Mississippi's bribery laws, which the Court concluded did not require a *quid pro quo* agreement, much less a *quid pro quo* agreement regarding a specific official act. D.E. 659 (Tr. 4710-11). The jury convicted Mr. Minor and his co-defendants on all counts. *Whitfield*, 590 F.3d at 342. On the RICO count, the jury found that Mr. Minor had committed two predicate acts: bribery under Mississippi law and honest services fraud. *Id.* Mr. Minor was sentenced in September 2007. *Id.* at 343.

Mr. Minor timely appealed his convictions. *Whitfield*, 590 F.3d at 343. On December 11, 2009, the United States Court of Appeals for the Fifth Circuit reversed Mr. Minor's convictions for federal program bribery and conspiracy to commit federal program bribery and

affirmed the remainder of Mr. Minor's convictions. *Id.* at 373.[1] The Fifth Circuit vacated Mr. Minor's sentences on all counts and remanded the case to this Court for resentencing. *Id.*

After the Fifth Circuit's ruling, the United States Supreme Court issued its opinion in *Skilling v. United States*, 130 S. Ct. 2896 (2010). In *Skilling*, the Supreme Court held for the first time that the honest services fraud statute reaches only "bribery and kickback" schemes and it explicitly *rejected* the government's argument that the honest services fraud statute proscribes "undisclosed self-dealing by a public official or private employee." *Id.* at 2932-33. The Court also explained that the honest services fraud statute must be construed using "a uniform national standard" that does not vary by jurisdiction based on the idiosyncrasies of state law. *Id.* at 2933 (internal quotation marks omitted).

The resentencing hearing for Mr. Minor and his co-defendants is currently scheduled for January 20, 2011.

**ARGUMENT**

I.  **The Change In Controlling Law That Occurred After The Fifth Circuit's Decision Requires The Vacatur Of Mr. Minor's Convictions.**

The indictment and jury instructions in this case were based on a pre-*Skilling* theory of honest services fraud that permitted the jury to convict Mr. Minor based on, *inter alia*, alleged self-dealing and nondisclosure and that relied on state law to define the elements of the offense. The Supreme Court's decision in *Skilling*—which was issued after the Fifth Circuit remanded the case—makes clear that these aspects of the indictment and jury instructions were based on an incorrect reading of the honest services fraud statute and that Mr. Minor's convictions are

---

[1] Mr. Minor's convictions on Counts Two, Twelve, and Fourteen were reversed, and his convictions on Counts One, Three, Four, Five, Six, Eight, Nine, and Ten were affirmed. *Whitfield*, 590 F.3d at 373.

3

unquestionably tainted by legal error.  In light of the effect of this intervening change in controlling law, this Court should vacate all remaining counts on which Mr. Minor was convicted.  *See generally United States v. Howard*, 471 F. Supp. 2d 772, 783 (S.D. Tex. 2007) (granting motion to vacate convictions after time for seeking new trial had expired where a change in controlling law after the verdict but before sentencing invalidated government's theory of guilt), *aff'd*, 517 F.3d 731 (5th Cir. 2008).[2]

### A.  *Skilling* is a post-conviction change in controlling law.

At the time of Mr. Minor's trial, controlling precedent, through an *en banc* decision of the Fifth Circuit, held that the honest services fraud statute drew content from the "services . . . owed under state law"—that is, the "rights and duties locatable in state law." *United States v. Brumley*, 116 F.3d 728, 734-35 (5th Cir. 1997) (en banc).  In addition, at the time of Mr. Minor's trial, Fifth Circuit precedent permitted the honest services statute to be applied to schemes of undisclosed self-dealing and concealment—not just to bribery and kickback schemes.  *See United States v. Gray*, 96 F.3d 769, 774-75 (5th Cir. 1996) (holding that a scheme to conceal material information could constitute honest services fraud).

---

[2] The mandate rule does not pose an obstacle to consideration of this motion.  That rule—which provides that a district court generally should not consider issues on remand other than those it was directed to consider by the appellate court—is a "discretionary device and not immutable." *United States v. Pineiro*, 470 F.3d 200, 205 (5th Cir. 2006).  Indeed, the rule has three exceptions, any one of which, "if present, would permit a district court to exceed [the] mandate on remand." *United States v. Matthews*, 312 F.3d 652, 657 (5th Cir. 2002).  One exception allows a district court to address issues outside the mandate on remand if "there has been an intervening change in law by a controlling authority." *Id.*; *see also id.* (noting that where "an intervening change of law . . . effectively overruled [the court of appeals'] decision affirming" an enhancement to the defendant's sentence, the district court could consider the impact of that change in law on remand).

*Skilling* changed the standard for alleging and proving honest services fraud in the Fifth Circuit. The Supreme Court held that the honest services fraud statute only applies to "bribery and kickback" schemes. 130 S. Ct. at 2933. Specifically, the Supreme Court clarified that the honest services statute "does not encompass conduct more wide-ranging than the paradigmatic cases of bribes and kickbacks" and that "[i]ts prohibition on bribes and kickbacks draws content . . . from federal statutes proscribing—and defining—similar crimes." *Id.* The Court also made clear that the honest services fraud statute must be construed using "a uniform national standard" that does not vary by jurisdiction based on the particularities of state law. *Id.*

Thus, after *Skilling*, a defendant may only be convicted of violating the honest services fraud statute based on participation in bribery and kickback schemes—*not* schemes of bias, deceit, concealment, or undisclosed self-dealing. And in order to convict a defendant on a bribery-based honest services charge, the government must prove beyond a reasonable doubt that the defendant engaged in bribery as that term is construed under federal law—which requires a specific *quid pro quo* agreement—instead of under state law.

**B. The post-conviction change in controlling law renders the jury instructions invalid.**

1. In light of the Fifth Circuit's en banc decision in *Brumley*, it was commonly understood at the time of trial that Mississippi law supplied the correct bribery standard for the bribery-based honest services fraud charges against Mr. Minor. "Consistent with [*Brumley*,] . . . [this Court] . . . based its definition of bribery in the jury charge on the Mississippi offense of bribery." *Whitfield*, 590 F.3d at 348. *Skilling* makes clear, however, that the Court should have looked to federal law—not state law—when defining bribery-based honest services fraud for the jury.

5

The Court instructed the jurors that they could find Mr. Minor guilty of a violation of the honest services fraud statute if they concluded that the government proved beyond a reasonable doubt that he violated Mississippi bribery law, which required only "an intent to influence." Explaining the honest services charges, the Court stated:

> Now, later on I'm going to emphasize what honest services means in this context. So you are going to hear me talk about honest services later. But when you hear me discuss honest services later, you're going to hear me referring to the *bribery laws of the State of Mississippi*. That is, by honest services, it refers to violation of the *bribery laws of the State of Mississippi*. Now, I'm going to emphasize that throughout as I talk to you about honest services. So you will hear me say that [on] more than one occasion. So then *you can fix it in your mind* that when you see honest services, that you know we are talking about an alleged violation of the *bribery laws of the State of Mississippi*.

D.E. 659 (Tr. 4749-50) (emphases added).

Further, the Court instructed the jury that it could convict Mr. Minor of bribery-based honest services fraud if the government proved:

> that the defendant knowingly created or participated in a scheme to defraud or deprive the State of Mississippi of the honest services of defendant John H. Whitfield. This deprivation of honest services owed to the State of Mississippi refers to the *bribery laws of the State of Mississippi*.

*Id.* (Tr. 4770-71) (emphases added); *see also id.* (Tr. 4776) (The Court: "And you also remember that when we talked about honest services, we're referring to *bribery laws of the State of Mississippi*. . . . The deprivation of honest services refers to an alleged violation of the *bribery laws of the State of Mississippi* again. Therefore, . . . the government must prove that the defendant knowingly devised or participated in a scheme to violate the *bribery laws of the State of Mississippi*.") (emphases added); *id.* (Tr. 4707) (The Court: "I have modified defendant Paul Minor's proposed instruction No. 12 to provide the *Mississippi state law definition of bribery*.") (emphases added). In reliance on this Mississippi bribery law, the Court instructed the jury that,

6

to find Mr. Minor guilty of bribery-based honest services fraud, "there need not be a mutual intent on the part of both the giver and the offeree or accepter of the bribe." *Id.* (Tr. 4771).

On appeal, the Fifth Circuit noted that the invocation of Mississippi's bribery standard was "[c]onsistent with" *Brumley* and therefore approved this Court's incorporation of Mississippi bribery law into its honest services jury instructions. *Whitfield*, 590 F.3d at 348.[3]

These state-law-based instructions—and the binding circuit precedent on which they were based—are incompatible with *Skilling*'s holding that *federal* law provides a "uniform national standard" for the elements of bribery and kickback under the honest services statute. 130 S. Ct. at 2933. In fact, the government has conceded what *Skilling* makes clear: This Court's reliance on Mississippi bribery law was incorrect. *See* Brief for the United States in Opposition at 21 n.5, *Minor v. United States*, No. 09-1422 (U.S. Aug. 25, 2010) ("The court's reliance on state law was incorrect because the honest-services statute 'establish[es] a uniform national standard.' *Skilling* v. *United States*, 130 S. Ct. 2896, 2933 (2010) (brackets in original).").

The erroneous reliance on Mississippi bribery law prejudiced Mr. Minor because, as Mr. Minor proposed, the jury should have been required to find the existence of a *quid pro quo* agreement, and that the agreement pertained to a specific official act, to convict him of bribery-

---

[3] It was not necessary for Mr. Minor to object to this Court's "incorporation of the Mississippi definition of bribery in the jury charge" to preserve a *Skilling*-based challenge to the instructions. *Whitfield*, 590 F.3d at 348. To have challenged the use of Mississippi bribery law in this Court or on appeal would have been futile given the on-point, binding Fifth Circuit authority requiring the use of Mississippi law at the time. *See United States v. Howard*, 517 F.3d 731, 738 (5th Cir. 2008) (recognizing the futility of objecting before a change in law when "there was no basis for objection at the time the charge was given"). Moreover, as discussed in the text, Mr. Minor objected to the Court's failure to modify the definition of bribery so that it would satisfy the requirements of relevant Supreme Court precedent. *See* D.E. 658 (Tr. 4662-75).

based honest services fraud. Indeed, Mr. Minor requested three bribery instructions that would have required the jury to find a specific *quid pro quo* agreement. D.E. 658 (Tr. 4662-75). That is the standard required by federal bribery law as the U.S. Supreme Court has construed it, consistent with the First Amendment. The erroneous reliance on Mississippi bribery law led the Court to reject Mr. Minor's proposed instructions and to permit the jury to return a guilty verdict without finding "mutual intent on the part of both the giver and the offeree or accepter of the bribe." D.E. 659 (Tr. 4771).

The Supreme Court requires proof of a specific *quid pro quo* agreement where federal bribery-related statutes are applied in the campaign contribution setting. *McCormick v. United States*, 500 U.S. 257 (1991), for example, held that the government cannot obtain a conviction under the Hobbs Act based on the receipt of campaign-related financial support unless it "prov[es] that the defendant committed or promised to commit a quid pro quo." *Id.* at 264 n.4 (internal quotation marks omitted). The Court explained that campaign contributions can only amount to an illegal give-and-take between the donor and recipient if the "payments [were] made in return for an *explicit* promise or undertaking by the official to perform or not perform an official act." *Id.* at 273 (emphasis added). "To hold otherwise," the Court emphasized, "would open to prosecution not only conduct that has long been thought to be well within the law but also conduct that in a very real sense is unavoidable so long as election campaigns are financed by private contributions or expenditures." *Id.* at 272; *see also Citizens United v. FEC*, 130 S. Ct. 876, 910 (2010) ("[A] substantial and legitimate reason, if not the only reason, . . . to make a contribution to[ ] one candidate over another is that the candidate will respond by producing those political outcomes the supporter favors.") (internal quotation marks omitted).

Similarly, in *Evans v. United States*, 504 U.S. 255 (1992), the Court reiterated that campaign support violates the Hobbs Act only when the public official receives a contribution "in return for [the recipient's] *agreement* to perform specific official acts." *Id.* at 268 (emphasis added). And in *United States v. Sun-Diamond Growers of California*, 526 U.S. 398 (1999), the Court explained the distinction between bribery, gratuity, and gifts, and held that an essential element of *federal* bribery is proof of "a *quid pro quo*—a specific intent to give or receive something of value *in exchange* for an official act." *Id.* at 404-05 (emphasis in original).[4]

*McCormick*, *Evans*, and *Sun-Diamond* make clear that federal law requires the existence of an *agreement*—a specific *quid pro quo*—to prove bribery-based charges whenever campaign support is the basis for criminal prosecution. Because the standard for bribery prohibited by the honest services statute "draws content . . . from federal statutes proscribing—and defining—

---

[4] The government itself has repeatedly embraced a specific *quid pro quo* requirement in the campaign-support context. Indeed, the government recently defended a conviction in the Supreme Court in an honest services case by noting that the instructions properly required a *quid pro quo*:

> The court of appeals correctly concluded that the [honest services] bribery instructions comported with *McCormick* and *Evans* by requiring the jury to find that petitioners "*agreed*" that Siegelman would take "specific action" in exchange for the . . . contribution from Scrushy. . . . By requiring a *meeting of the minds* covering the specific terms of the exchange, the instruction prevented conviction based on a finding that the $500,000 was given or received with only an *expectation* of future official action by Siegelman benefiting Scrushy—a scenario allowed by the flawed instructions in *McCormick*.

Brief for the United States in Opposition at 19, *Scrushy v. United States*, 130 S. Ct. 3541 (2009) (Nos. 09-1678 & 09-182) (citation and alteration omitted; third emphasis in original); *see also* Brief for the United States at 35, *Evans*, 504 U.S. 255 (No. 90-6105) ("In circumstances where a campaign contribution is extorted under color of official right, the offense is completed at the time the public official receives a payment in return for his *agreement* to perform *specific official acts*.") (emphases added).

similar crimes" (*Skilling*, 130 S. Ct. at 2933), the government was required to prove in this case the existence of an agreement or a meeting of the minds between Mr. Minor and his co-defendants. Mr. Minor's proposed instructions were consistent with this requirement. D.E. 658 (Tr. 4662-75). The instructions given to the jury by the Court, in contrast, were not. The fatal flaw is that these instructions, grounded in Mississippi bribery law, permitted the jury to return an honest services fraud conviction without finding "mutual intent on the part of both the giver and the offeree or accepter of the bribe." D.E. 659 (Tr. 4771).

2. Because the jury convicted Mr. Minor based on a legally erroneous honest services fraud instruction, Mr. Minor's convictions cannot stand unless the government can prove "beyond a reasonable doubt that the [erroneous instructions] did not contribute to the verdict obtained." *Neder v. United States*, 527 U.S. 1, 15 (1999) (internal quotation marks omitted); *see also Yates v. United States*, 354 U.S. 298, 312 (1957) (convictions cannot stand where it is unclear whether the convictions rested on legally valid or invalid bases). The government cannot meet that exacting requirement.

"Courts presume that jurors 'conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them.'" *Howard*, 471 F. Supp. 2d at 781-82 (quoting *Francis v. Franklin*, 471 U.S. 307, 324 n.9 (1985)); *see also Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (jurors are assumed to "follow their instructions"). Moreover, "[j]urors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law . . . . When, therefore, jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise

will save them from that error." *United States v. Howard*, 517 F.3d 731, 737 n.5 (5th Cir. 2008) (quoting *Griffin v. United States*, 502 U.S. 46, 59 (1991)).

Here, the jury was given a legally flawed instruction for deciding whether to convict Mr. Minor of bribery-based honest services fraud. The jury was instructed that Mississippi law supplied the applicable bribery standard and that, under Mississippi law, it is illegal to offer a bribe in the form of a campaign contribution even if the offeror and candidate do not possess "mutual intent" to exchange a bribe. D.E. 659 (Tr. 4771). There is nothing in the record, including nothing in the verdict form, that the government can rely upon to prove beyond a reasonable doubt that these erroneous instructions, which omitted the *quid pro quo* agreement requirement, did *not* affect Mr. Minor's convictions. *See Howard*, 517 F.3d at 736 (a conviction must be reversed where "a legally invalid theory was submitted to the jury and it is impossible to tell whether the jury's verdict of guilt relied on the invalid theory" (citing *Yates*, 354 U.S. at 312)).[5]

---

[5] The honest services instruction referred to "a corrupt agreement." D.E. 659 (Tr. 4771). Whatever that language might have done to move the instruction in the direction of the Supreme Court's requirements, it was completely undone by the statement in the very next sentence instructing the jurors that "there need not be a mutual intent on the part of both the giver and the offeree or accepter of the bribe" for the government to prove the offense of bribery under Mississippi law. *Id.* Such instructions do not satisfy the statute after *Skilling*. Indeed, the Supreme Court vacated for further consideration in light of *Skilling* another case charging a defendant with bribery-based honest services fraud in the campaign contribution context, even though the jurors were more specifically instructed that they could not convict unless "the [d]efendant and official *agree[d]* that the official w[ould] take *specific* action in *exchange* for the thing of value." *United States v. Siegelman*, 561 F.3d 1215, 1227 (11th Cir. 2009) (per curiam) (internal quotation marks omitted), *vacated*, 130 S. Ct. 3542 (2010). The Supreme Court's order vacating the *Siegelman* decision is doubly significant because *Siegelman* is the one case the Fifth Circuit cited for the conclusion that, if there were a *quid pro quo* requirement, "the jury charge in this case sufficiently fulfilled that requirement." 590 F.3d at 353.

The improper jury instructions infect all the remaining counts on which Mr. Minor was convicted because, in each instance, the jury was permitted to rely on a legally incorrect standard for bribery-based honest services fraud. Specifically, Count One, the conspiracy charge concerning Mr. Minor and Mr. Whitfield, required the jury to find at least one of four underlying objects to return a guilty verdict. Two of the four objects relied on 18 U.S.C. § 666, which the Fifth Circuit held as a matter of law did not apply to Mr. Minor's or Mr. Whitfield's conduct. *Whitfield*, 590 F.3d at 347. The conspiracy's other two underlying objects, which the jury found proven, were alleged violations of the honest services fraud statute. D.E. 572 at 1-2. Because the jury was improperly instructed on the appropriate bribery standard to apply under that statute, Mr. Minor's conviction on Count One must be vacated.

For Count Three, a RICO charge, the jury found the bare minimum needed to convict—two of the four charged predicate racketeering acts. *See* 18 U.S.C. § 1961(5) ("'pattern of racketeering activity' requires at least two acts of racketeering activity"). The jury found that the government proved racketeering act two (state-law bribery involving a $100,000 loan to John Whitfield) and racketeering act four (honest services-based wire fraud involving the payment of a loan to John Whitfield). D.E. 572 at 4. In light of the erroneous honest services fraud instruction, the jury's finding as to racketeering act four cannot stand and Mr. Minor's conviction on Count Three also must be vacated.

Finally, Counts Four through Six and Counts Eight through Ten all charged violations of the honest services fraud statute and therefore must be vacated.

### C. The post-conviction change in controlling law renders the indictment and convictions invalid due to an overbroad honest services theory.

Vacatur of Mr. Minor's convictions is also required because he was indicted, and subsequently convicted, on a theory of honest services fraud that was explicitly rejected by the

12

Supreme Court in *Skilling*. As explained above, *Skilling* held that the honest services fraud statute criminalizes only schemes involving bribes and kickbacks; schemes of undisclosed self-dealing and concealment are *not* encompassed by the statute. 130 S. Ct. at 2931-33. Because the indictment alleged that Mr. Minor engaged in a "scheme to defraud" through undisclosed self-dealing and concealment of financial interest, the indictment charged an "offense" under the honest services fraud statute that is not an offense at all. Moreover, even if the indictment is not invalid, vacatur of the convictions is still required because the indictment included—and the jurors were instructed on—an invalid theory of honest services fraud, and the government cannot prove beyond a reasonable doubt that the jury's verdict did not rest on that theory.

### 1. Because the indictment is invalid, Mr. Minor's convictions must be vacated.

If an indictment charges a non-offense, it is defective, and that defect is fatal regardless of whether the jury instructions supplied the necessary elements of the offense. *See Stirone v. United States*, 361 U.S. 212 (1960); *United States v. Marcello*, 876 F.2d 1147 (5th Cir. 1989); *see also United States v. Deisch*, 20 F.3d 139, 145-46 (5th Cir. 1994) (explaining that an indictment that fails to charge an element of the offense cannot be cured by a jury instruction), *overruled on other grounds by United States v. Doggett*, 230 F.3d 160, 165 (5th Cir. 2000).

In *Marcello*, for example, the Fifth Circuit vacated a conviction that had been based on an indictment that was premised on a legal theory subsequently rejected by the Supreme Court. 876 F.2d at 1149-52. The defendants had been convicted of RICO violations, including a scheme to defraud citizens of non-property rights under the mail fraud statute. *Id.* at 1149. After their conviction, the Supreme Court held in a different case that the mail fraud statute is "'limited in scope to the protection of property rights.'" *Id.* at 1150 (quoting *McNally v. United States*, 483 U.S. 350, 360 (1987)). As a result of that change in controlling law, the defendants sought

13

post-conviction relief, and, in response, "[t]he government argue[d], and the trial judge held, that the jury instructions cured the defect in the indictment" that was caused by the post-conviction change in law. *Id.* at 1151. The Fifth Circuit disagreed, and vacated the convictions. *Id.* at 1151-52, 1154. The Court held that the jury instructions could not cure the defective indictment. The instructions "informed the jury that the scheme [the defendants engaged in] was substantially the same as the one alleged in the indictment"—indeed, the instructions specifically referenced the indictment and specifically mentioned that each juror had a copy of the indictment to use during deliberations (*id.* at 1151 (quoting jury instructions))—and they permitted the jury to convict the defendants for conduct that the Supreme Court held was not within the reach of the mail fraud statute. *Id.* at 1151-52.

As in *Marcello*, the post-conviction change in law announced in *Skilling* makes clear that the indictment charged Mr. Minor with offenses based on conduct that does not constitute honest services fraud. Also as in *Marcello*, the Court instructed the jury that the government had to prove that Mr. Minor "devise[d] a scheme to defraud that was substantially the same as the one alleged in the indictment" (D.E. 659 (Tr. 4772)), read extensively from the indictment while charging the jury, and informed the jurors that they would have a copy of the indictment to use during deliberations. *Id.* (Tr. 4724-45, 4748-66).

An examination of the indictment leaves no doubt that the theory of prosecution was that Mr. Minor participated in a scheme to defraud through deceit, bias, undisclosed self-dealing, and concealment, none of which is an offense in light of *Skilling*. For example, Counts Four through Six and Count Eight of the indictment charged that Mr. Minor "devised and intended to devise a scheme and artifice to defraud and deprive the state of Mississippi of its intangible right to the honest services of [Mr. Whitfield], performed free from *deceit*, *bias*, *self-dealing* and

14

*concealment*." D.E. 454 at 22, ¶ 2 (emphases added) (indictment); *see also id.* at 24, ¶ 2 (same). The indictment also charged that "[t]he purpose of the *scheme* was for [Mr. Minor] to *conceal* the source of the payment of funds by [Mr. Minor] through [an intermediary]." *Id.* at 25, ¶ 3 (emphases added). Similarly, Counts Nine and Ten charged that Mr. Minor "devise[d] a scheme and artifice to defraud and deprive the state of Mississippi of its intangible right to the honest services of [Mr. Teel], performed free from *deceit*, *bias*, *self-dealing* and *concealment*." *Id.* at 26, ¶ 2 (emphases added). And as to racketeering act four under Count Three, the indictment charged that Mr. Minor "devise[d] a scheme and artifice to defraud and deprive the State of Mississippi of its intangible right to the honest services of [Mr. Whitfield], performed free from *deceit*, *bias*, *self-dealing* and *concealment*." *Id.* at 21, ¶ 15 (emphases added). It further charged that "[i]t was the purpose of the scheme" for Mr. Minor "to *conceal* the source of the payment." *Id.* ¶ 16 (emphasis added).

 The repeated references in the indictment to, for example, "concealment" and "self-dealing" to describe the alleged honest services fraud offense make clear that Mr. Minor was *not* indicted in those counts for a bribery or kickback scheme, but rather for a scheme of concealing and failing to disclose his financial relationships with Judges Whitfield and Teel. Indeed, the counts of the indictment charging honest services fraud do not even contain the word "bribery." *See Allen v. United States*, 867 F.2d 969, 972 (6th Cir. 1989) ("[T]he issue is not what [the defendant] might have been charged with when one examines his conduct in retrospect and recharacterizes it in light of [new Supreme Court precedent], but what charges actually were lodged against him, tried, and submitted to the jury."). The indictment also references "deceit" and "bias" as part of the deprivation of the honest services allegedly suffered by the State of Mississippi. But deceit and bias—just like concealment and self-dealing—cannot constitute a

15

violation of the honest services fraud statute after *Skilling* because the statute must be "[i]nterpreted to encompass *only* bribery and kickback schemes." 130 S. Ct. at 2933 (emphasis added). Thus, "no other misconduct" is proscribed by the statute, *id*., and the language of the indictment itself requires vacatur. *See Marcello*, 876 F.3d at 1151-52.

The government's closing argument confirms this point. The government made expressly clear that the theory of its case was that Mr. Minor engaged in self-dealing and concealment. In fact, the very first thing that the government said during its closing argument was that "this case is about subtle deception and concealment." D.E. 659 (Tr. 4797). Accordingly, Mr. Minor was indicted for and convicted of engaging in conduct that cannot be an offense under the honest services fraud statute in light of *Skilling*. Consistent with what other courts have done where indictments charged conduct that became a non-offense under *Skilling*, this Court should vacate Mr. Minor's convictions. *See United States v. Riley*, 621 F.3d 312, 324 (3d Cir. 2010) (reversing conviction on a count of honest services fraud where the "fraudulent act [was] the non-disclosure of a conflict of interest" and where the jury was not instructed that honest services fraud was limited to bribes and kickbacks as required by *Skilling*); *United States v. Davidson*, No. 09-13388, 2010 WL 3933350, at *1 (11th Cir. Oct. 8, 2010) (per curiam) (reversing convictions for honest services fraud because the defendant "was charged with and convicted of undisclosed self-dealing instead of bribery or kickbacks").

> **2.     Because the government cannot prove beyond a reasonable doubt that the verdict rested on a valid legal theory, Mr. Minor's convictions must be vacated.**

Even assuming the indictment were not invalid, vacatur would still be required because the charges were based at least in part on—and the jury was instructed on—a theory of honest services fraud that is no longer viable after *Skilling*, and it is therefore more than possible that the jury's guilty verdicts relied upon that invalid theory.

16

Where the jury could have convicted the defendant by choosing among multiple grounds, one of which is legally insufficient, the verdict must be set aside unless the government can prove beyond a reasonable doubt that the submission of the legally invalid honest services fraud theory to the jury did *not* affect the convictions. *See Yates*, 354 U.S. at 312 (convictions cannot stand where it is unclear whether the convictions rested on legally valid or invalid bases); *Zant v. Stephens*, 462 U.S. 862, 881 (1983); *see also Marcello*, 876 F.2d at 1153 ("Without some indication that the jury rested its RICO conviction on two legally sufficient predicate acts, and not on either the mail or wire fraud charges [that are no longer crimes], we must reverse [the defendant's] conviction."). The government cannot meet that burden in this case.

The indictment, the jury instructions, and the government's closing arguments *all* provided that Mr. Minor could be convicted of honest services fraud based on concealment and self-dealing. Because this now-invalid theory of honest services fraud pervaded the record, it is beyond dispute that the jurors may have relied on that improper theory to convict Mr. Minor. Even if a juror reading the indictment, reviewing the jury instructions, and hearing the government's closing arguments had a basis for finding there was circumstantial evidence of specific *quid pro quo* bribery—conduct that could constitute a violation of the honest services fraud statute after *Skilling*—the same juror could have decided to convict instead based on undisclosed self-dealing or concealed conflicts of interest, neither of which is a violation of the honest services fraud statute under *Skilling*. Indeed, the verdict form does not identify the factual basis for the jury's guilty verdict on the honest services counts. Because the government cannot prove that the verdict rested on a legally valid basis, Mr. Minor's convictions must be vacated.

## **CONCLUSION**

For the foregoing reasons, the Court should vacate Mr. Minor's remaining convictions, including all fines, restitution, and interest that Mr. Minor was ordered to pay as a result of the convictions.[6]

Dated:  December 17, 2010

Respectfully submitted,

Theodore B. Olson,
   *admitted pro hac vice*
David Debold,
   *admitted pro hac vice*
Gibson, Dunn & Crutcher LLP
1050 Connecticut Ave., NW
Washington, DC  20036
Office:  202-955-8500
Fax:  202-467-0539
email:  TOlson@gibsondunn.com
email:  DDebold@gibsondunn.com

  /s  Chuck McRae
Chuck McRae, MSB #2804
416 East Amite Street
Jackson, MS  39201
Office:  601-944-1008
Fax:  866-236-7731
email:  chuck@msjustice.net

***Attorneys for Defendant Paul S. Minor***

---

[6] In combination with the Fifth Circuit's decision vacating three other counts of conviction, the requested relief includes the return of $1.5 million in restitution to USF&G and $2.75 million in fines, including interest.  D.E. 618.

## CERTIFICATE OF SERVICE

I, Chuck McRae, do hereby certify that on December 17, 2010, I served the above and foregoing Memorandum in Support of Defendant Paul S. Minor's Motion to Vacate Convictions via the Court's ECF filing system, which sent notification of this filing to all counsel of record.

 s/ Chuck McRae
Chuck McRae, MSB #2804
416 East Amite Street
Jackson, MS  39201
Office:  601-944-1008
Fax:  866-236-7731
email:  chuck@msjustice.net