UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

UNITED STATES OF AMERICA

V.  CRIMINAL NO. 3:03-CR-0120 HTW JCS

PAUL S. MINOR, ET AL.

### GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO VACATE CONVICTIONS

The United States, by and through the undersigned counsel, submits this Response in Opposition to the Defendants' Motion to Vacate Convictions.

**I.  BACKGROUND**

After over seven and a half years of litigation, this Court is no doubt very familiar with the facts of the case, which also have been set forth in detail in the Fifth Circuit's opinion. <u>United States v. Whitfield</u>, 590 F.3d 325 (5th Cir. 2009).  Regardless of how the defendants attempt to spin the facts in the present motion, they were convicted of numerous felony offenses as the result of what the Fifth Circuit accurately described as "two prolonged bribery schemes spanning nearly four years each."  <u>Id.</u> at 352.[1]

---

[1] Minor's suggestion that he was convicted only for making "campaign-related loans" (Motion, at 1 and 2) is false.  In fact, as the Fifth Circuit specifically found, the majority of the money provided to Whitfield had nothing to do with any election campaign, and Minor also provided Teel with "valuable financial and legal assistance" that was not campaign-related. <u>Whitfield</u>, 590 F.3d at 352.  Moreover, neither this Court nor the jury nor the Court of Appeals has ever found any of Minor's bribes to be "campaign contributions" under <u>United States v. McCormick</u>, 500 U.S. 257, 273 (1991), and <u>Evans v. United States</u>, 504 U.S. 255, 268 (1992). "[W]e reject any attempt to characterize the $100,000 loan guarantee to Whitfield for the down-payment on a home and the financial and legal assistance provided to Teel in connection with his state prosecution for embezzlement as having anything to do with their respective electoral campaigns."  <u>Whitfield</u>, 590 F.3d at 353 (affirming the jury instructions even under a heightened standard).

This case is before the Court for resentencing following remand. After extensive briefing, including numerous supplemental filings, the Fifth Circuit reversed the convictions of all three defendants for violations of 18 U.S.C. § 666 based on its finding that although Minor bribed the judges, the government failed to prove the jurisdictional element of the offense, that is, that the bribery was in connection with the business of the Mississippi Administrative Office of the Courts. *Id.* at 347. All remaining counts of conviction were affirmed, and the case was remanded for resentencing on those counts. *Id.* at 373.

Significantly for the present motion, the Fifth Circuit found that this Court had properly instructed the jury as to the elements of honest services fraud through bribery and rejected the defendants' arguments that the Court did not adequately instruct the jury regarding the concept of *quid pro quo*. "Under the undisputed facts here, the jury's finding that there was a corrupt agreement necessarily entailed a finding of an exchange of things of value for favorable rulings in the judges' courts. Therefore, to the extent that a *quid pro quo* instruction may have been required in this case, the district court adequately delivered one." *Id.* at 353. The Fifth Circuit explained that the jury instructions even satisfied the heightened requirements applicable to bribery related to campaign activity. "Still, even if we assume that a *quid pro quo* instruction was necessary because at least some of the financial transactions in question were campaign-related, we conclude that the jury charge in this case sufficiently fulfilled that requirement." *Id.* at 353.

On January 19, 2010, Minor and his co-defendants sought reconsideration by the Fifth Circuit. A significant portion of their argument was devoted to their contention that "*quid pro*

*quo*" was not properly explained in the jury instructions. On February 24, 2010, the Court of Appeals denied the Petition for Reconsideration and issued the mandate on March 4, 2010.

On May 24, 2010, the defendants filed a Petition for Certiorari before the United States Supreme Court. In that petition, the defendants primarily claimed that their conduct was protected by the First Amendment as campaign-related speech activity in the form of campaign contributions, an argument never raised in this Court. Significantly, the defendants did not make the arguments set out in this motion to vacate in their pleadings before the Supreme Court. On June 24, 2010, the Supreme Court handed down the opinion in *Skilling v. United States*, 130 S. Ct. 2896 (2010), upon which they now rely. The government responded to the Petition on August 25, 2010, and the defendants submitted their reply on September 7, 2010. The Petitioners did not ask the Supreme Court to vacate their convictions based upon *Skilling* and remand for further proceedings. The Supreme Court denied the petition on October 4, 2010.

Relying on *Skilling*, the defendants now ask this Court to vacate their convictions on essentially two new grounds: (1) that the Court improperly instructed the jury on the elements of bribery by referring to Mississippi law; and (2) that the defendants were improperly convicted of honest services fraud based on undisclosed "self-dealing" and "concealment" rather than bribery. As explained herein, these arguments have no merit, and the motion should be denied.

## II.   THIS COURT SHOULD NOT CONSIDER THE ARGUMENTS RAISED IN THE DEFENDANTS' "MOTION TO VACATE."

The Federal Rules of Criminal Procedure provide no vehicle through which the defendants may now raise these claims. At this stage of the proceedings, the defendants' convictions have been affirmed on appeal, the Supreme Court has denied certiorari, and the case

is before this Court for the limited purpose of a sentencing remand. No procedural vehicle exists for now raising new challenges to the defendants' convictions in this Court or for relitigating issues on which they failed to prevail in the court of appeals. To the contrary, assuming that any *Skilling*-based claims may be heard by this Court at all, it is only pursuant to collateral attack after the convictions have become final. *See* 28 U.S.C. 2255 (federal prisoners may "move the court which imposed the sentence to vacate, set aside or correct the sentence"). Accordingly, the present "motion to vacate" constitutes a blatant end-run around 28 U.S.C. 2255(h), which permits only one such collateral attack (except in extraordinary circumstances) .

      A.      **NEITHER THE MANDATE RULE NOR ANY EXCEPTION THERETO PERMITS THE PRESENT MOTION.**

To avoid this obvious conclusion, defendants contend[2] in a footnote that an exception to the mandate rule permits this motion. Motion at 4, n.2. As the Fifth Circuit has explained, the mandate rule, "which is a corollary or specific application of the law of the case doctrine, prohibits a district court on remand from **reexamining** an issue of law or fact previously decided on appeal and not resubmitted to the trial court on remand." *United States v. Pineiro*, 470 F.3d 200, 205 (5th Cir. 2006) (emphasis added). "Without this doctrine, cases would end only when obstinate litigants tire of **re-asserting the same arguments** over and over again. Moreover, the doctrine discourages opportunistic litigants from appealing repeatedly in hopes of obtaining a more sympathetic panel of this court." *United States v. Matthews*, 312 F. 3d 652, 657 (5th Cir. 2002) (citing *United States v. Bacerra*, 155 F.3d 740, 752 (5th Cir. 1998) (emphasis added)).

---

    [2] Minor filed the present motion, which was joined by Teel and Whitfield. References to arguments made by Minor are, therefore, also applicable to his co-defendants, even if not specifically stated.

The mandate rule is a "discretionary device" subject to certain exceptions.[3]  *Matthews*, 312 F.3d at 657.  Under one such exception, a district court may "reexamine" an issue properly raised on appeal based on an "intervening change of law by a controlling authority."  *Id.*

But the defendants cannot rely on either the rule, or the exception, for three separate reasons.  First, they have failed to demonstrate that any of the issues they now attempt to raise were actually "examined" on appeal.  *U.S. v. Marmolejo*, 139 F.3d 528, 531 (5th Cir. 1998) ("[T]he resentencing court can consider whatever this court directs-no more, no less.  All other issues not arising out of this court's ruling and not raised before the appeals court, which could have been brought in the original appeal, are not proper for reconsideration by the district court below."); *Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co.*, 510 F.3d 474, 481 (4th Cir.2007) ("[A] remand proceeding is not the occasion for raising new arguments or legal theories.").  Indeed, although the defendants now insist that "[t]he indictment and jury instructions in this case * * * permitted the jury to convict them based on, *inter alia*, alleged self-dealing and non-disclosure," on appeal Minor argued just the opposite:

> Since the original indictment in July 2003 to the Third Superseding Indictment filed in December 2005, **the government has consistently alleged a classic quid pro quo bribery case**: that Mr. Minor engaged in a scheme to bribe Mississippi state court judges with loan guarantees and other things of value "in return for favorable treatment" in his cases before the judges. (D454 at 1583 & 1590)(emphasis added).  **Every other count of the Third Superseding Indictment echoed and relied upon this quid pro quo bribery scheme.**

---

[3]  *United States v. Howard*, 471 F. Supp. 2d 772 (5th Cir. 2007) does not involve the application of the mandate rule as Minor implies.  That case involved a post-trial motion to vacate based on a change in the law that occurred after the jury verdict but before sentencing.  Furthermore, the order vacated the verdict and ordered a new trial.  The court did not dismiss the charges.

Minor App. Br., p. 37 (emphasis added).  Furthermore, Minor admitted[4] in his Reply Brief before the Fifth Circuit that the jury was required to find the defendants guilty of <u>bribery</u> on every count in order to convict them:

> For every count, the district court provided an instruction on bribery.  (3/28/07 Tr. at 4770-71 & 4786, D659).  ***For every count the jury had to find bribery to convict.***  <u>Id.</u>  That is why, when Minor raised his challenge on appeal, he claimed that the district court's faulty bribery instruction required this Court to "vacate all counts of [his] conviction." (Minor Br. at 55).

Minor App. Reply Br., p. 3 (emphasis added).[5]  This is consistent with Minor's closing argument, in which his counsel Minor's counsel emphasized the same point, stating "every count they have to prove bribery. As [AUSA] Fulcher said yesterday, they have to prove that he did it in exchange for those cases pending." Tr. 4918-21.

Indeed, defendants do not appear to have ever argued on appeal[6] that the indictment or jury instructions posed any risk of conviction for "self-dealing."[7]  As for the Court's use of

---

[4]  Teel and Whitfield adopted Minor's arguments pursuant to Rule 28(i) of the Federal Rules of Appellate Procedure.

[5]  As we explained above, the Fifth Circuit correctly rejected Minor's appellate claim that the bribery instructions were "faulty."

[6]  We acknowledge that the voluminous appellate proceedings make absolute pronouncements somewhat risky.  In any event, the defendants bear the burden of demonstrating that any claim they now seek to raise pursuant to an exception to the mandate rule was properly preserved on appeal, a burden they have entirely failed to discharge.

[7]  As for the defendants' present claim that they could have been convicted of "concealment," Minor did argue on appeal that this Court's alleged "failure to clearly define what was and was not bribery," might have permitted conviction based on "state ethical lapses," *i.e.*, Whitfield and Teel's failure to report Minor's bribes on their financial disclosure forms.  Minor App. Br., p. 54.  In fact, this Court carefully instructed the jury regarding the relevance of this evidence, noting that "[t]he government relies upon such proof to support its allegation that the defendants violated the laws **pertaining to bribery**," and explaining that "**[p]roof that a defendant failed to comply with the directives of a statement of economic interest, standing**

Mississippi law in defining bribery, this (entirely harmless) error, *See infra* at 10, was actually invited by Minor in the district court,[8] and was not thereafter contested in the court of appeals. *See* Whitfield, 590 F.3d at 348 ("Appellants do not contest the district court's incorporation of the Mississippi definition of bribery in the jury charge."). Invited error constitutes a form of waiver because "[a] party generally may not invite error and then complain thereof." United States v. Baytank (Houston), Inc., 934 F.2d 599, 606-07 (5th Cir. 1991).[9]

Second, the *Skilling* decision should not be viewed as an "intervening" decision that requires any exception to the "mandate rule." Minor notes that *Skilling* was decided "after the Fifth Circuit remanded the case." Motion at 3. But, *Skilling* actually came down while the defendants' petitions for a writ of certiorari (which he failed to mention) was still pending in the Supreme Court, at a time when the court of appeals' decision remanding the case was not yet

---

**alone, is not proof that a federal law has been violated.**" Tr. 4793 (emphasis added). Thus, to the extent that any particular argument based on a "concealment" theory has been preserved, it is frivolous.

[8] *See, e.g.,* Tr. 4076 (Minor's counsel argues: "We submit that none of the 1346 charges * * * can reach the jury unless a reasonable juror could find beyond a reasonable doubt violations of these defendants of the elements of the Mississippi bribery statute."); *id.* at 4077 (Minor's counsel argues that the relevant duty is defined under Mississippi law); *id.* at 4704 (Minor's counsel argues that "[t]he important thing, of course, is what does the Mississippi bribery statute require?"); Whitfield, 590 F.3d at 348 (district court based jury charge on Mississippi law "at the request of all parties").

[9] Minor contends in a footnote (Motion at 7 n.3) that he did not need to object to the use of Mississippi law in the jury instructions because doing so would have been "futile" given Fifth Circuit law. This argument ignores the fact that Minor did not merely acquiesce in the use of Mississippi law – he invited the error. In any event, the Fifth Circuit has repeatedly rejected the argument that claims that are contrary to existing precedent do not need to be preserved. Indeed, it has done so in this very case. Whitfield, 590 F.3d at 370 n.35. Accordingly, there is no need to determine here whether Fifth Circuit law actually required (or merely permitted) the jury to be instructed under Mississippi law.

final. Although the defendants had already filed their certiorari petitions, relevant rules permitted them to file a supplemental brief asking the Supreme Court to vacate their convictions and remand to the court of appeal for further consideration in light of *Skilling*. *See* Sup. Ct. R. 15.8 ("Any party may file a supplemental brief at any time while a petition for a writ of certiorari is pending calling attention to new cases * * * or other intervening matter not available at the time of the party's last filing."). The defendants likewise could have requested the same relief in their reply briefs, filed more than two months after *Skilling* was decided. Because the defendants deliberately bypassed this potential avenue of relief, no discretionary departure from the mandate rule is warranted here. Instead, the defendants must now litigate the significance of *Skilling* (if any) by way of Section 2255.[10]

Third, "the change in the law" exception to the mandate rule only permits a narrow inquiry into how an intervening and "controlling authority" impacts the case under review. As we discuss *infra* at 9, *Skilling* is not a "controlling authority" on any issue actually litigated on appeal in this case. To the contrary, because this case was indicted, tried, instructed and argued on a bribery theory, *Skilling* has no impact here - except as further authority supporting the convictions. Not surprisingly, therefore, many of the arguments raised in the present motion are unrelated to any change in the law set forth in *Skilling*. Instead, they are simply an attempt to relitigate in this Court arguments and claims on which Minor failed to prevail in the court of appeals. The mandate rule clearly prohibits this Court from considering such claims.

---

[10] We note that none of the "mandate rule" cases on which Minor relies involves a similar fact pattern, where the allegedly "controlling" decision was issued while the defendant had a certiorari petition pending in the Supreme Court.

> B.   **EVEN IF THIS COURT COULD SOMEHOW CONSIDER MINOR'S *SKILLING*-BASED ARGUMENTS, THOSE ARGUMENTS HAVE BEEN WAIVED.**

For the reasons addressed above, this Court should decline to rule upon Minor's "Motion to Vacate." Should the Court disagree, however, it must still consider whether these claims have been waived. *See* Whitfield, 590 F.3d at 346 ("As a general rule, a party waives any argument that it fails to brief on appeal."). Even if an exception to the mandate rule somehow permits this Court to stray beyond the sentencing tasks identified by the court of appeals, that exception cannot overcome a previous failure to properly preserve an argument on appeal. Indeed, even when the Supreme Court has vacated an appellate decision and remanded for reconsideration in light of an intervening case (a remedy *not* afforded here), the lower courts need not consider an argument that has been waived in the court of appeals. United States v. Taylor, 409 F.3d 675, 676-77 (5th Cir. 2005).[11]

**III.   *SKILLING*  PRESENTS NO BASIS FOR VACATING THE CONVICTIONS IN THIS CASE.**

The Supreme Court's decision in Skilling v. United States, 130 S. Ct. 2896 (2010) does not provide an avenue for the Court to stray from the Fifth Circuit's mandate and vacate the defendants' convictions. Instead, the Court upheld honest services fraud convictions based on bribery or kickbacks and even cited favorably to the Fifth Circuit opinion in this case.

---

[11] "Plain error" review is generally applied to an argument that is forfeited in the district court, but raised on appeal. *See* Fed. R. Crim. P. 52(b). In Whitfield, the Fifth Circuit nonetheless applied plain error to an argument defendants had not raised on appeal because "enforcement of the waiver doctrine would result in a conviction that is unsupported by the plain language of the statute itself." 590 F.3d at 347 n.15. No such argument can be made with respect to the claims that Minor seeks to raise here. To the contrary, Skilling foreclosed any such argument by affirming the validity of convictions for honest services fraud through bribery.

In *Skilling,* the Court considered a vagueness challenge to the honest-services fraud statute, 18 U.S.C. § 1346, and upheld the reach of § 1346 to fraudulent schemes involving bribes or kickbacks.[12]  The Court reviewed the origin and application of the honest-services fraud doctrine.  "'Most often these cases . . . involved bribery of public officials,' but courts also recognized private-sector honest-services fraud." *Id.* (quoting *United States v. Bohonus*, 628 F.2d 1167, 1171 (9th Cir. 1980)).

In *McNally v. United States*, 483 U.S. 350, 107 S. Ct. 2875 (1987), however, the Supreme Court struck down honest services fraud on the grounds that the mail fraud statute was limited in scope to the protection of property rights.  In response, Congress enacted § 1346, which defined the term "scheme or artifice to defraud" under the mail and wire fraud statutes to include a scheme or artifice to deprive another of the intangible right of honest services. 130 S.Ct. at 2927.

In *Skilling*, the Court concluded that "there is no doubt that Congress intended § 1346 to reach at least bribes and kickbacks" because the "vast majority" of pre-*McNally* honest services cases involved bribery or kickback schemes.  130 S. Ct. at 2930-31 (internal quotation marks and citation omitted).  The Court stated that "whatever the school of thought concerning the scope and meaning of § 1346, it has always been as plain as a pikestaff that bribes and kickbacks constitute honest-services fraud, and the statute's mens rea requirement further blunts any notice

---

[12]  The indictment charged *Skilling* with, inter alia, "conspiring to defraud Enron's shareholders by misrepresenting the company's fiscal health, thereby artificially inflating its stock price." 130 S. Ct. at 2934.  Noting the absence of any allegation "at any time" that Skilling had solicited or accepted a bribe or kickback in exchange for making the misrepresentations, the Court concluded that "Skilling did not commit honest services fraud." *Id.*  Nevertheless, the Court remanded the case to the court of appeals for a determination on whether the error was harmless insofar as Skilling's conspiracy conviction may have rested on a valid (securities fraud) as opposed to invalid (honest-services fraud) theory. See *id.* (citing *Hedgpeth v. Pulido*, 129 S. Ct. 530 (2008) (per curiam)).

concern." *Id.*, at 2933 (internal quotation marks and citations omitted). Nor does that construction create a risk of arbitrary prosecutions, the Court reasoned, because § 1346's "prohibition on bribes and kickbacks draws content not only from the pre-*McNally* case law, but also from federal statutes proscribing – and defining – similar crimes," including 18 U.S.C. § 666. *Id.* at 2933-34.

Indeed, in *Skilling* the Court cited favorably to the Fifth Circuit's opinion <u>in this case</u> as an example of how honest services convictions for bribery are rooted in the long history of federal cases and statutes criminalizing bribery and kickbacks. *Id.* at 2933-34. Because the defendants were convicted of honest services fraud based upon bribery, *Skilling* does not provide authority for this Court to vacate their convictions. To the contrary *Skilling* validates the defendants' convictions.

    **A.    *SKILLING* DOES NOT INVALIDATE THE JURY INSTRUCTIONS ON HONEST SERVICES FRAUD THROUGH BRIBERY.**

The Fifth Circuit held that this case was tried on a bribery theory of honest services fraud, and that the jury instructions were consistent with federal bribery laws. *Whitfield*, 590 F.3d at 353. Because the jury instructions properly reflected federal bribery law, any error in the jury instruction's references to Mississippi law was harmless. Furthermore, the invited error doctrine precludes the defendants from challenging the jury instructions that they requested. Finally, the Fifth Circuit held that the jury instructions fully explained the concept of *quid pro quo*, and nothing in *Skilling* allows the defendants to revisit this issue on remand.

### 1. THE FIFTH CIRCUIT FOUND THAT THE BRIBERY INSTRUCTIONS WERE CONSISTENT WITH FEDERAL LAW.

To the extent that the bribery instructions relied on Mississippi law, as requested by the defendants at trial, that reliance constitutes no more than harmless error since Mississippi law and federal law are consistent as to what the government must prove to convict.[13] The Supreme Court's holding in *Skilling* that honest services fraud through bribery is defined by federal law does not represent a change in the law that affects this case. On appeal, the Fifth Circuit held that the bribery instructions were consistent with federal law:

> This jury charge was also consistent with the language of the Fifth Circuit Pattern Jury Instructions on "Bribery of a Public Official" under 18 U.S.C. § 201(b)(1) and "Receiving Bribe by Public Official" under 18 U.S.C. § 201(b)(2), which require the jury to find that the defendant gave "something of value ... corruptly with intent to influence an official act" (bribery) or accepted "something of value ... corruptly in return for being influenced in his performance of an official act" (receiving a bribe). See Fifth Circuit Pattern Jury Instructions (Criminal Cases) §§ 2.12, 2.13 (2001).

*Whitfield*, 590 F.3d at 348. Because the Fifth Circuit held that the bribery instructions were consistent with federal law, *Skilling* is not a change in the law that impacts this case.

### 2. THE INVITED ERROR DOCTRINE PROHIBITS THE DEFENDANTS FROM CHALLENGING THE BRIBERY INSTRUCTIONS BASED ON THEIR REFERENCE TO STATE LAW.

Because the defendants asked that the instructions define bribery in accordance with Mississippi law, the invited error doctrine prohibits them from asserting that this was reversible

---

[13] Of course, the references to Mississippi bribery law were proper with regard to RICO predicate act two, which charged a violation of Mississippi bribery laws as explicitly permitted under RICO. "'Racketeering activity,'" in turn, is defined to include 'any act ... involving ... bribery ... which is chargeable under State law and punishable by imprisonment for more than one year.' § 1961(1)(A)." *Salinas v. U.S.* 522 U.S. 52, 62 (1997).

error. The "invited error" doctrine applies to jury instructions and precludes a party from challenging on appeal an instruction that it requested below. <u>United States v. Baytank (Houston), Inc.</u>, 934 F.2d 599, 606-07 (5th Cir. 1991). Minor's Proposed Jury Instruction Number 13, which was titled "Proof of Bribery" was based on Mississippi's statutes criminalizing bribery, §97-11-11 and § 97-11-53 of the Mississippi Code. Although that instruction was not given as written, this Court's instructions ultimately incorporated Mississippi law as invited by the defendants. The defendants argued unsuccessfully to the Fifth Circuit that the failure to give this instruction constituted reversible error. Minor App. Br., p. 42-43. As the Fifth Circuit noted, this Court based its definition of bribery in the jury instructions at the request of all parties. <u>Whitfield</u>, 590 F.3d at 348. The invited error doctrine prohibits the defendants from challenging the application of Mississippi law.

   **3. THE FIFTH CIRCUIT HAS ALREADY RULED THAT THE JURY INSTRUCTIONS PROPERLY AND FULLY EXPLAINED THE CONCEPT OF "*QUID PRO QUO*."**

The defendants continue to insist that there is a problem with the Court's jury instructions with regard to the concept of *quid pro quo*. The Fifth Circuit held in this case that the jury instructions were not defective and that they accurately and completely explained the law to the jury concerning what had to be proven in order for them to convict the defendants.

> Under the undisputed facts here, the jury's finding that there was a corrupt agreement necessarily entailed a finding of an *exchange* of things of value for favorable rulings in the judge's courts. Therefore, to the extent that a *quid pro quo* instruction may have been required in this case, the district court adequately delivered one.

<u>Whitfield</u>, 590 F.3d at 353. These issues were thoroughly litigated on appeal, and the defendants

lost. There is no change in the law that allows the defendants to re-assert their old arguments on this issue in this sentencing proceeding.

Minor also attempts to use *Skilling*'s conclusion that bribery should be defined under federal law to inject new life into his rejected claim that the "*quid pro quo*" instructions were inadequate because this was a "campaign contribution" case. Motion at 5-12. This argument simply does not fly. To the extent that the First Amendment imposes a heightened *quid pro quo* requirement where bribes are made as campaign contributions, that requirement would apply whether the underlying crime was defined under federal or state law. More importantly, in rejecting Minor's claim, the Fifth Circuit did not rely on the fact that the jury instructions defined bribery under Mississippi law. Instead, it concluded that the instructions (which it found to be consistent with *both* federal and state bribery law) adequately defined the *quid pro quo* required in this case. *Whitfield*, 590 F.3d at 352-53.[14] Thus, Minor's renewed claims that "the jury should have been required to find the existence of a *quid pro quo* agreement," and "that the agreement pertained to a specific official act," do not rely on any "intervening change" in "controlling authority" relevant to this case. To the contrary, these claims rest (as they always have) on *McCormick* and *Evans*, cases decided long before the remand to this Court.[15]

---

[14] Contrary to Minor (Motion at 7), the Fifth Circuit did not "approve" the incorporation of Mississippi law into the instructions. Instead, after noting that the use of Mississippi law was "consistent" with *Brumley* and done "at the request of the parties," the appellate court found that the instructions were also consistent with the pattern jury instructions for bribery under federal law. 590 F.3d at 348. Accordingly, the distinction between state and federal bribery law played absolutely no role in the appellate court's analysis.

[15] In prior pleadings on appeal, the government has demonstrated at length that the crime of bribery does not require *either* (1) a completed agreement between the briber and the bribee, or (2) an agreement to perform a specific official act identified at the time money changes hands. *See, e.g.*, Gov't C.A. Br. 60-63, 67 n.28; Response of the United States to Defendant Minor's

### B.   THE DEFENDANTS WERE CONVICTED OF BRIBERY, NOT UNDISCLOSED SELF-DEALING.

The honest services fraud convictions in this case were based on bribery - a category of honest services fraud that was upheld in *Skilling*.  The indictment, jury instructions and closing arguments were clear that this was a bribery case.  The Fifth Circuit opened its lengthy opinion with the following description of the case:

> Defendants-appellants, attorney Paul Minor and former Mississippi state judges John Whitfield and Walter (''Wes'') Teel, were charged with participating in two separate bribery schemes in which Minor arranged, guaranteed, and eventually paid off loans for Whitfield and Teel, allegedly in order to corruptly influence the outcome of cases Minor filed in their courts.

*Whitfield*, 590 F.3d at 335.  "This case concerns two separate bribery schemes, at the center of which lay Paul Minor, formerly a successful trial attorney in Mississippi." *Id.*, at 336.  The Fifth Circuit consistently described the crimes for which the defendants were convicted as bribery.

As noted by the defendants in the present motion, the Fifth Circuit's holding in *United States v. Brumley* 116 F.3d 728 (5th Cir. 1997) restricted honest services prosecutions to cases involving "something close to bribery." *Whitfield*, 590 F.3d at 348.  "Consistent with that opinion and at the request of all parties, the district court based its definition of bribery in the jury charge on the Mississippi offense of bribery...." *Id.*.  All of the parties - including all of the defendants - requested jury instructions consistent with bribery, not "undisclosed self-dealing."

---

Petition for Reconsideration at 1-4.  Moreover, these earlier discussions (which we hereby incorporate by reference) also make clear that Mississippi and federal law are entirely consistent in this regard.  *Ibid.*

15

Indeed, it is hard to know what "self-dealing" would entail in the context of this case. In *Skilling*, the term was used to describe "the taking of official action by the [government] employee that furthers his own undisclosed financial interests while purporting to act in the interests of those to whom he owes a fiduciary duty." 130 S. Ct. at 2932. A legislator, for example, engages in "self-dealing" when he takes actions that benefits his (undisclosed) interests or stocks or real-estate. But the corrupt verdicts rendered by Whitfield and Teel benefitted them financially only because they were rendered in exchange for bribes received from Minor. Accordingly, in the context of this case, a "self-dealing" theory and a "bribery" theory are one and the same.[16]

The jury clearly understood that the honest services fraud charges were based solely on proof of bribery. In the jury instructions, this Court repeatedly used phrases such as "honest services fraud through bribery" and "scheme to defraud another of honest services through bribery." Tr. 4736, 4743, 4750, 4752, 4771, 4774.

> Now, later on I'm going to emphasize what honest services means in this context. So you are going to hear me talk about honest services later. But when you hear me discuss honest services later, you're going to hear me referring to the bribery laws of the State of Mississippi. That is, by honest services, it refers to violation of the bribery laws of the State of Mississippi. Now, I'm going to emphasize that throughout as I talk to you about honest services. So you will hear me say that more than one occasion. So then you can fix it in your mind that when you see honest services, that you know we are talking about an alleged violation of the bribery laws of the State of Mississippi. All right?

Tr. 4749-50. The Fifth Circuit singled out one portion of the jury instructions for emphasis:

> In order to prove the scheme to defraud another of honest services through bribery, the government must prove beyond a reasonable doubt that the particular

---

[16] It is even less clear how Minor (who was not a public official) could possibly have engaged in any "self-dealing" in this case.

>   defendant entered into a corrupt agreement for Paul S. Minor to provide the
>   particular judge with things of value specifically with the intent to influence the
>   action or judgment of the judge on any question, matter, cause or proceeding
>   which may be then or thereafter pending subject to the judge's action or judgment.

*Whitfield*, 590 F.3d at 348 (quoting from jury instructions, Tr. 4770-71). The Court's jury instructions made it clear to the jury that honest services fraud as charged in this case was based solely on bribery.

The defendants never claimed on appeal that this case had been charged, tried, or instructed on a "self dealing" theory. Instead, the defendants argued to the Fifth Circuit that this was a bribery case in which this Court had improperly instructed the jury as to what had to be proven to convict for bribery. As previously noted, Minor argued that "the government... consistently alleged a classic *quid pro quo* bribery case" and that every count of the Indictment under which he was convicted "echoed and relied upon this *quid pro quo* bribery scheme." Minor App. Br., p. 37. Furthermore, defendant Minor admitted in his Reply Brief before the Fifth Circuit that the jury was required to find the defendants guilty of <u>bribery</u> on every count in order to convict them. "For every count the jury had to find bribery to convict." Minor App. Reply Br., p.3.

Minor's Petition for a Writ of Certiorari to the Supreme Court likewise did not claim that the convictions for honest services fraud were based on undisclosed self-dealing rather than bribery. Instead, Minor argued that the things of value that he gave to Whitfield and Teel in exchange for favorable rulings in their courts were political contributions protected by the First Amendment and that this Court's instructions concerning bribery did not adequately define what was required to prove bribery in a campaign contribution case. Furthermore, the *Skilling* case

had been briefed and was pending at the time that Minor's Cert. Petition was filed, therefore providing him with ample notice and opportunity to raise this issue in his Petition, if not earlier.[17]

*Skilling* does not render this case subject to review as an undisclosed self-dealing case. To the contrary, *Skilling* itself cites the Fifth Circuit's opinion in this case as an example of a bribery case in which the Court properly noted the long history of federal law prohibiting bribery.

> As to arbitrary prosecutions, we perceive no significant risk that the honest services statute, as we interpret it today, will be stretched out of shape. Its prohibition on bribes and kickbacks draws content not only from the pre-*McNally* case law, but also from federal statutes proscribing and defining similar crimes. [citations omitted] *United States v Whitfield*, 590 F. 3d 325, 352-53 (C.A. 5 2009)

*Skilling*, 130 S. Ct. at 2933-34.

This is a bribery case. The indictment clearly explains that the defendants were charged with bribery, the jury was properly instructed as to bribery, a significant portion of the defendants' argument on appeal asserted that they were improperly convicted of bribery, and the Fifth Circuit upheld the honest services convictions as properly based on bribery. To now come before this Court and argue that this is some other sort of honest services case completely flies in the face of the facts, the law and the previous arguments the defendants have made in this case.

### C. DEFENDANTS CANNOT LAUNCH A NEW ATTACK ON THE INDICTMENT.

Finally, Minor attacks the indictment on the ground that it "charged [him] with offenses based on conduct [*i.e.*, "self dealing" and "concealment"] that does not constitute honest services fraud." Motion at 14. As we have previously noted, this argument is the antithesis of a

---

[17] His new attorneys for the Petition to the Supreme Court, who have filed the present motion, can hardly claim to be ignorant of this argument since they participated in *Black v. United States*, 130 S.Ct. 2963 (2010) in which the petitioner raised similar arguments concerning honest services fraud through undisclosed self-dealing,

preserved claim. Indeed, Minor's appellate brief praised the indictment for "alleg[ing] a classic *quid pro quo* bribery case." Minor App. Br., p. 14. Moreover, the time for challenging the indictment expired long ago. *See* Fed. R. Crim. P. 12(b)(3)(B) (listing "a motion alleging a defect in the indictment or information" among "motions that must be made before trial.")[18]

And Minor's waived indictment challenge merit in any event. The gist of Minor's claim is that, because the indictment described "honest services" as services "performed free from deceit, bias, self-dealing, and concealment," Third Superceding Indictment at 24 ¶ 2, he must have been charged on a theory that extended beyond bribery alone, into territory now forbidden by *Skilling*. Motion at 14-16. But the fact that the indictment defined the duty of honest services more broadly than simply avoiding bribery has no impact on the validity of the convictions in this case. At worst, this additional language was surplusage, which Minor could have (but did not) move to strike. Minor's failure in this regard is hardly surprising because the case was in fact tried, argued and instructed on a bribery theory, and therefore a passing reference in the indictment to "self-dealing" had no impact on this case.

### III. CONCLUSION

For the foregoing reasons, the Court should deny the defendant's motion to vacate.

---

[18] "At any time while the case is pending," this court may hear a claim that the indictment fails "to state an offense." Fed. R. Crim. P. 12(b)(3)(B). This exception has no application here because, as Minor informed the court of appeals, every count of the indictment alleged a bribery scheme. Minor App. Br., p. 37. In Minor's own words, "Counts 4-6 and 8-10 alleged mail, wire, and/or honest services fraud, again based on the loan guarantees and with the purpose 'to provide things of value' to Judges Whitfield and Teel in exchange for 'an unfair advantage in matters' before the Judges," *i.e.*, a "*quid pro quo* bribery scheme." *Id.* at 37-38.

                                                Respectfully submitted,
Jack Smith
Chief, Public Integrity Section
Criminal Division
U.S. Dept. Of Justice

By: */s/ Dave Fulcher*

| | |
|---|---|
| Ruth R. Morgan | David H. Fulcher |
| Assistant U.S. Attorney | Assistant U.S. Attorney |
| 1575 20th Avenue | 188 E. Capitol Street, Suite 500 |
| Gulfport, MS 39501 | Jackson, MS 39201 |
| 228-563-1560 | 601-965-4480 |
| MSB# 1996 | MSB # 10179 |

### CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

This the 7th day of January, 2011.

                                                */s/ Dave Fulcher*
                                                David H. Fulcher
                                                Assistant U.S. Attorney