**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Criminal Docket No. 3:03cr120-HTW-JCS** |
| **PAUL S. MINOR** | |

## DEFENDANT PAUL S. MINOR'S REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO VACATE CONVICTIONS

The government's host of meritless procedural arguments ignore the reality that the Supreme Court held for the first time in *Skilling v. United States*, 130 S. Ct. 2896 (2010), that the honest-services fraud statute reaches only bribery and kickback schemes, that those schemes are defined by a single national standard (not state law), and that this intervening change in law is central to the validity of Mr. Minor's remaining convictions.  Reversal is warranted.

### ARGUMENT

**I.    The Motion To Vacate Convictions Is Properly Before This Court.**

The government's opposition to Mr. Minor's Motion to Vacate Convictions argues that the motion is foreclosed procedurally for three reasons.  Each is incorrect.

*First*, the motion is properly before the Court under a well-recognized exception to the mandate rule.  The government advances two contradictory reasons for its requested finding that the mandate rule, which is not jurisdictional, *see United States v. Matthews*, 312 F.3d 652, 657 (5th Cir. 2002), precludes review of the validity of Mr. Minor's convictions.  On one hand, it suggests that Mr. Minor has previously raised the same type of challenge in the Fifth Circuit, such that the Court would be "reexamining" an issue of law or fact decided on appeal.  Opp'n at

4.  On the other hand, it argues that Mr. Minor is raising issues not asserted on appeal and, therefore, waived a challenge based on the intervening change in controlling law.  Opp'n at 5.

The government's contradiction reveals its mistake.  Far from asking this Court to reexamine how the honest-services fraud statute was interpreted and applied under the law that pre-dated *Skilling*, the point here is that the instructions were erroneous for a reason that the Fifth Circuit could not have addressed in *Whitfield*—they conflict with the new understanding of the honest-services fraud statute announced in *Skilling* after the Fifth Circuit issued its mandate. D.E. 774.  Contrary to *Skilling*, the Fifth Circuit concluded for example that the jury was properly instructed on honest-services fraud using Mississippi bribery law, 590 F.3d 325, 348 (5th Cir. 2009), something even the government now concedes was error.  Opp'n at 7; U.S. Br. Opp'n at 21 n.5, *Minor v. United States*, No. 09-1422 (U.S. Aug. 25, 2010) ("The court's reliance on state law was incorrect because the honest-services statute 'establish[es] a uniform national standard.'  *Skilling* v. *United States*, 130 S. Ct. 2896, 2933 (2010) (brackets in original).").  This motion properly raises the issue whether these errors made evident by *Skilling* were prejudicial.

The mandate rule exception applies because there has been an intervening change in law by a controlling authority; and the government cites no case stating that the same precise issue had to have been raised on appeal.  Indeed, the lone Fifth Circuit opinion cited by the government to support its contention that a litigant must predict the significance of a change in law that has yet to occur—*United States v. Marmolejo*, 139 F.3d 528 (5th Cir. 1998)—actually supports Mr. Minor's position.  Opp'n at 5.  There, the Fifth Circuit held that a party may not newly raise issues on remand that *could have been* raised in the original appeal.  139 F.3d at 531. The law does not, however, require prescience on the part of litigants.  This motion is allowed

because it demonstrates that an intervening change in controlling authority requires a different result than the Fifth Circuit previously reached regarding the validity of the jury instructions and the related charging language, because Mr. Minor timely challenged that language as flawed, and because he also previously offered the government and the Court a way to cure the error.

*Second*, the government argues that the motion is somehow improper because Mr. Minor did not avail himself of a Supreme Court rule allowing a supplemental brief to bring the *Skilling* case to that Court's attention.  Opp'n at 7-8.  Apart from the fact that Supreme Court Rule 15.8 is permissive—not mandatory—the government is simply incorrect that such relief was not suggested.  It was in the petition itself.  *See* Pet. Writ Cert. at 13, *Minor*, No. 09-1422 (U.S. May 24, 2010) ("If this Court invalidates the honest services fraud statute, then it should grant this petition, vacate petitioner's convictions, and remand the case . . . .").

Moreover, in opposing Mr. Minor's certiorari petition, the government argued that Supreme Court review was premature given the case's interlocutory posture, stating "the interests of judicial economy would be best served by denying review now and allowing petitioners to reassert all of their claims, including any claims that might arise upon resentencing, at the conclusion of the proceedings."  U.S. Br. Opp'n at 11, *Minor*, No. 09-1422.  If the Supreme Court should consider claims involving the validity of the instructions, and the charges on which they were based, only after further proceedings, this Court should address the validity of Mr. Minor's convictions in light of *Skilling* in those further proceedings.  The government would make this Court wait until after resentencing to address *Skilling*, but the determination whether Mr. Minor was convicted of a crime under *Skilling* is logically antecedent to any determination of what his new sentence for that crime should be.

*Third*, Mr. Minor did not waive his *Skilling*-based arguments at trial by "inviting" the instructional error. Although it is not necessary to make a futile objection to take advantage of a later change in law, *see United States v. Howard*, 517 F.3d 731, 738 (5th Cir. 2008) (recognizing futility when "there was no basis for objection at the time the charge was given"); *United States v. W. Indies Transp., Inc.*, 127 F.3d 299, 305 (3d Cir. 1997) (invited error doctrine inapplicable when erroneous instruction given in reliance on then-current law), Mr. Minor *did* object to the instructions. Had the Court given those that he proposed, there would have been no *Skilling* error. Instead, the jurors would have needed to find the requirements for bribery, as supplemented by federal bribery law and consistent with constitutional limits, including explicit instructions on the need to find the existence of a *quid pro quo* agreement. D.E. 658 (Tr. 4662-75) (addressing Proposed Instructions 12, 13 and 18). The instructions that Mr. Minor asked the Court to give were, therefore, entirely consistent with *Skilling*'s holding that *federal* law provides the elements of bribery under the honest-services statute. Thus, Mr. Minor did not invite the Court to provide erroneous jury instructions.[1]

## II.    The Post-Conviction Change In Controlling Law Set Forth In *Skilling* Requires Vacatur Of Mr. Minor's Convictions.

The government contends that the Supreme Court's decision in *Skilling* has no meaningful impact on the legal sufficiency of the counts charged in the indictment, the accuracy of the jury instructions, or the validity of Mr. Minor's convictions. It argues that the Fifth Circuit addressed these issues and that, to the extent there was any error in light of *Skilling*, such error was harmless. Opp'n at 9-18.

---

[1] In particular, Mr. Minor *never* agreed that the use of the phrase "corrupt agreement" in Mississippi's definition of bribery was sufficient to convey the need for a *quid pro quo* agreement to prove bribery-based honest-services fraud.

But the Fifth Circuit has *not* analyzed the propriety of Mr. Minor's convictions through the lens of *Skilling*.  When the Fifth Circuit considered Mr. Minor's appeal, binding case law interpreted the honest-services fraud statute to reach a wide variety of conduct involving undisclosed conflicting interests and other concealment.  *See United States v. Gray*, 96 F.3d 769, 774-75 (5th Cir. 1996).  *Skilling* unequivocally overruled that precedent when it held that the honest-services fraud statute only applies to bribery and kickback schemes.  130 S. Ct. at 2932-33.  Because, at the time, the Fifth Circuit had held that the honest-services fraud statute could properly be applied to much more, that Court had no reason to consider whether the jury could have convicted Mr. Minor for honest-services fraud premised on something other than bribery.  Instead, the Court limited its examination to whether the instructions sufficiently conveyed the idea of give-and-take for purposes of bribery under Mississippi law.  *Whitfield*, 590 F.3d at 353.

*Skilling* now requires a single national definition of bribery under the honest-services fraud statute, rather than one that varies with state law.  Even under the government's view, the state-law-based instruction used here is now just as flawed as the one given in the case on which the government relied to defend the instructions.  U.S. Br. at 75-76 (5th Cir.) (citing *United States v. Jackson*, 72 F.3d 1370 (9th Cir. 1995), as dealing with a similar state statute that pre-*Skilling* also allowed a bribery conviction absent a *quid pro quo* instruction).  And with that uniformity requirement now firmly established, the government points to no federal bribery case in this context where it sufficed to label as "corrupt" a scheme to influence an elected official *without also* instructing the jury of the need to find that the official action was "in return for" or "in exchange for" the payment.  *See, e.g., United States v. Jennings*, 160 F.3d 1006, 1020 (4th Cir. 1998) (explaining, in a § 666 bribery case, that "a correct definition of 'corruptly' must modify the 'to influence or reward' language in the court's instruction"; without "an appropriate

definition of 'corruptly,' an instruction mistakenly suggests that § 666 prohibits *any* payment made with a generalized desire to influence or reward (such as a goodwill gift), no matter how indefinite or uncertain the payor's hope of future benefit").

     An intent to influence is insufficient, especially because contributions to officials who must run for election are routinely intended to influence.[2]  *Citizens United v. FEC*, 130 S. Ct. 876, 910 (2010).  When the instructions referred to a "corrupt agreement for Paul S. Minor to provide the particular judge with things of value specifically with the intent to influence the action or judgment of the judge on any question, matter, cause or proceeding which may be then or thereafter pending subject to the judge's action or judgment," D.E. 659 (Tr. 4771), the word "corrupt" simply gave the jury a shorthand for the "intent to influence" requirement, which—the jury was told—meant that it could convict for payments if there was any way in which the payer intended to influence the judge's "judgment" (a term that itself fairly includes such things as judicial philosophy) sometime in the future.  That is, the instruction defined unlawful influence to cover action or judgment on "any" question, matter, etc., at any time while the judge held office.  Moreover, the very next sentence told the jury that to constitute the offense of offering a bribe, "there need not be a mutual intent on the part of both the giver and the offeree or acceptor of the bribe."  *Id*.  The government knows that this language affirmatively warned the jury off of

---

[2]  The government asserts now, as it did in the Fifth Circuit, that Mr. Minor waived this electoral campaign aspect to his jury instruction challenge.  Although the Court of Appeals did not hesitate to speak up when other issues had not been preserved, it did not so much as hint that forfeiture or waiver was a problem on *this* issue.  And the government is disingenuous in suggesting that the issue is not joined by this record.  The Fifth Circuit considered the significance of the First Amendment precisely because, even though it questioned whether some of the payments were campaign related, it was "willing to assume that the initial $40,000 loan guarantee to Whitfield and the $25,000 loan guarantee to Teel were campaign contributions."  590 F.3d at 353.  The government cannot meet its burden of proving that the jury did not convict based on campaign-related payments.

the essential finding of an action in exchange for or in return for a payment; after all, this Court agreed with the government that the fact "there need not be a meeting of the mind[s]" "completely undermines [the defense] argument on *quid pro quo*."  D.E. 659 (Tr. 4710); *see also* D.E. 658 (Tr. 4700-06); U.S. Br. at 78 (5th Cir.) (arguing that the instructions didn't include, "as an element of the mail and wire fraud schemes, an express promise by the judicial defendants to perform an official act" because the law "did not require" it).

A second defect, in light of the *Skilling* ruling, is that the Fifth Circuit did not determine whether the jurors could have convicted for conduct previously believed to qualify as honest-services fraud.  To be sure, the government described the case repeatedly as being about bribes (albeit a version of bribery that does not violate the statutes under which Mr. Minor was charged).  And while the government articulated no other basis on which a jury *lawfully* could have convicted, neither the operative charging language nor the government's arguments were *exclusive* to the offense of bribery.  *See* D.E. 659 (Tr. 4772, 4777-78) (instructing the jury that "[i]t is not necessary that the government prove all the details alleged in the indictment concerning the precise nature and purpose of the scheme"; it need only be "substantially the same").  The government even defended the convictions by arguing that the instructions did not "permit conviction based solely on violations of Mississippi bribery laws"—*e.g.*, honest-services fraud includes "participat[ing] in a scheme to defraud the state of Mississippi of its right to honest services."  U.S. Br. at 79-80 (5th Cir.); *id.* at 78 (claiming the instructions sufficed by requiring the jury to find knowing participation, with specific intent to defraud, in a scheme to deprive Mississippi of honest services, and that the scheme "employed false material representations," which the indictment alleged as "cover[ing] up and conceal[ing]" by, *inter alia*, "failing to disclose" and "concealing their financial relationship").

In fact, the word bribery does not appear at all in any of the six substantive honest-services fraud counts of which Mr. Minor was convicted.  Instead, types of conduct that *Skilling* definitively ruled to be outside the scope of the statute *were* explicitly listed in those counts, which each charged Mr. Minor with "devis[ing] and intend[ing] to devise a scheme and artifice to defraud and deprive the state of Mississippi of its intangible right to the honest services of [a particular judge] performed free from *deceit*, *bias*, *self-dealing* and *concealment*."  D.E. 454 at 22, ¶ 2 (emphases added) (indictment); *id.* at 24, ¶ 2 (same).  It is the government's burden to prove, beyond a reasonable doubt, that the jurors did not convict for the very conduct that was listed in the indictment, including deceit, bias, concealment, or self-dealing.  After all, when the jury was asked if Mr. Minor engaged in bribery under the racketeering predicates, it twice answered "not proved" for conduct that elsewhere formed the basis for a conviction of honest-services fraud.  D.E. 572.  It is hardly reassuring—and flatly inconsistent with the government's burden to prove harmlessness beyond a reasonable doubt—for the government to proclaim now that "[i]ndeed, it is hard to know what 'self-dealing' would entail in the context of this case." Opp'n at 16.   In other words, the jury needed to come up with its own incorrect understanding of the meaning of "self dealing" in order to convict for conduct that the government deliberately elected to charge.

An examination of the indictment, the jury instructions, and the government's closing arguments makes it a virtual certainty that the jury convicted Mr. Minor for something other than *quid pro quo* bribery.  Apart from the fact that the word "bribery" was left out of the honest-services fraud counts, only to be replaced by at least one term (self-dealing) that the government practically concedes was included by mistake (at least as to Mr. Minor), the indictment does rely expressly on such things as deceit and concealment as the means for depriving Mississippi

8

citizens of their right to honest services.  *See, e.g.*, D.E. 454 at 22, ¶ 2; *see also id.* at 25, ¶ 3

(alleging that "[t]he purpose of the *scheme* was for [Mr. Minor] to *conceal* the source of the

payment of funds by [Mr. Minor] through [an intermediary]" (emphases added)).[3]

It wasn't just the plain language of the indictment that expressly invited the jury to

convict for conduct that *Skilling* holds is not a violation of the statute; the government repeatedly

argued that concealment *was* the crime.  That was the message from the get-go of the

government's summation, when the AUSA told the jury "this case is about subtle deception and

concealment," D.E. 659 (Tr. 4797), and that the defendants "concealed their financial dealings

through the use of bank loans, through cash payments, through the use of straw men," *id.* (Tr.

4798).  And the AUSA tied that theory to the only form of honest-services fraud expressly

identified in those counts, stating that the government "believe[s] that the evidence shows . . .

this was a scheme full of deceit, bias, self dealing and concealment" and that *this* evidence

"shows that all three defendants are guilty."  *Id.* (Tr. 4799).  The theme was repeated again and

again in rebuttal.  *See, e.g.*, D.E. 660 (Tr. 4969) (concluding that "you can find that the rulings in

these cases [over which the co-defendants presided as judges] were correct and still find that the

judges acted corruptly based on everything that they did, based on all the acts of concealment").[4]

---

[3]  The government concedes that apart from it being "hard to know" why anyone would charge
self dealing "in the context of this case," "[i]t is even less clear how Minor (who was not a
public official) could possibly have engaged in any 'self-dealing' in this case." Opp'n at 16
& n.16.

[4]  The jury was *not* instructed that concealment could only be considered as evidence of
bribery, rather than as another way to deprive the citizens of their right to honest services.
*See* Opp'n 6 n.7.  The quoted instruction dealt with a subset of concealment—failing to
comply with state ethics rules requiring affirmative disclosure of economic interests.  D.E.
659 (Tr. 4793).  And what the jury heard there—that failure to comply with state disclosure

[Footnote continued on next page]

For these errors to be harmless, they "must have made no difference in reaching the verdict obtained." *Yates v. Evatt*, 500 U.S. 391, 407 (1991).   The government bears the burden of proving harmlessness beyond a reasonable doubt based on the entire record.  *See Chapman v. California*, 386 U.S. 18, 24 (1967).  Given the heavy emphasis on concealment in the indictment and in the government's case, the government cannot credibly argue that the jurors must have ignored that avenue to conviction.  And even if there could be certainty that the jurors all relied exclusively on the instructions describing bribery, the absence of a requirement that the payment be "in exchange for" or "in return for" a specific action in one of the two cases over which the co-defendants presided violates the requirement in *Skilling* of a uniform national standard for bribery that comports with the requirements of federal bribery statutes, as applied consistent with the First Amendment.  The verdicts must be set aside.  *See Yates v. United States*, 354 U.S. 298, 312 (1957) (convictions cannot stand where it is unclear whether the convictions rested on legally valid or invalid bases); *Howard*, 517 F.3d at 736 (a conviction must be reversed where "a legally invalid theory was submitted to the jury and it is impossible to tell whether the jury's verdict of guilt relied on the invalid theory" (citing *Yates*, 354 U.S. at 312)).[5]

## **CONCLUSION**

For the foregoing reasons, in addition to the reasons set forth in the Motion to Vacate Convictions, the Court should vacate Mr. Minor's remaining convictions.

---

[Footnote continued from previous page]

requirements, "standing alone," is not a federal crime—was a reminder that other elements (such as an intentional failure to disclose, and a wire or mailing) had to be proved too.

[5]  The convictions also would be reversed under plain error review, because the error is clear under current law, affects substantial rights, and undermines the integrity of the proceedings.

Dated:  January 12, 2011                          Respectfully submitted,

                                                      Theodore B. Olson,
        *admitted pro hac vice*
  David Debold,
        *admitted pro hac vice*
  Gibson, Dunn & Crutcher LLP
  1050 Connecticut Ave., NW
  Washington, DC  20036
  Office:  202-955-8500
  Fax:  202-467-0539
  email:  TOlson@gibsondunn.com
  email:  DDebold@gibsondunn.com

   /s  Chuck McRae
  Chuck McRae, MSB #2804
  416 East Amite Street
  Jackson, MS  39201
  Office:  601-944-1008
  Fax:  866-236-7731
  email:  chuck@msjustice.net

  ***Attorneys for Defendant Paul S. Minor***

## <u>CERTIFICATE OF SERVICE</u>

I, Chuck McRae, do hereby certify that on January 12, 2011, I served the above and

foregoing Reply Memorandum in Further Support of Motion to Vacate Convictions via the

Court's ECF filing system, which sent notification of this filing to all counsel of record.


 s/ Chuck McRae
Chuck McRae, MSB #2804
416 East Amite Street
Jackson, MS  39201
Office:  601-944-1008
Fax:  866-236-7731
email:  chuck@msjustice.net