UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

UNITED STATES OF AMERICA

V.                                                CRIMINAL NO. 3:03-CR-0120 HTW JCS

PAUL S. MINOR, ET AL.

GOVERNMENT'S RESPONSE TO DEFENDANT
PAUL S. MINOR'S SUBMISSION OF SUPPLEMENTAL
AUTHORITY REGARDING MOTION TO VACATE

Defendant Paul S. Minor has filed a supplement to his previously filed motion to vacate his mail and wire fraud convictions in light of *Skilling v. United States*, 130 S. Ct. 2896 (2010). (Minor Supp.) This pleading contends that *United States v. Coniglio*, (3d Cir. Mar. 8, 2011) (No. 09-3071), a recent non-precedential decision, "fully supports" his motion to vacate. Minor Supp. at 1. This claim is incorrect. As the United States explains below, the Third Circuit reversed the honest services fraud convictions in *Coniglio* because the jury had been instructed that it could convict based on *either* (1) a valid bribery theory; *or* (2) an invalid theory that the defendant concealed a conflict of interest, and the error was not harmless. Here, this Court instructed the jury based solely on a valid bribery theory. Accordingly, even if Minor's motion to vacate could properly be heard by this Court in connection with a sentencing remand (it cannot), *Coniglio* sheds no light on the proper disposition of that motion.

I.      The *Coniglio* Proceeding.

Joseph Coniglio was a New Jersey State Senator who solicited and accepted $103,000 in "consulting fees" from Hackensack University Medical Center (HUMC), for which he performed virtually no legitimate services. Coniglio did, however, take numerous official acts in his role as a state senator benefitting HUMC. *Coniglio* Gov't C.A. Br. 2- 13 (filed 11/19/2010) (available

on PACER). Coniglio also took numerous actions to conceal his arrangement with HUMC and to mislead the public and the New Jersey legislature when the scheme began to unravel. *Id.* at 13-16.

On February 14, 2008, a grand jury returned an indictment charging Coniglio with, *inter alia*, eight counts of honest services mail fraud, in violation of 18 U.S.C. §§ 1341 and 1346. These counts charged two independent bases of liability: (1) bribery; and (2) taking official action that benefitted a concealed financial interest ("the concealed conflict theory"). *Coniglio* Appeal Appendix at 28-29 (available on PACER). At the trial, the district court permitted the government to argue that the concealed conflict theory was an independent basis upon which the jury could find Consiglio guilty of honest services mail fraud. *Consiglio* slip op. at 3. The district court then instructed the jury that it could convict Coniglio of honest services mail fraud based on either theory. *Coniglio* Appeal Appendix at 1021 (p. 2901) ("if a public official accepts a bribe or corrupt payment, *or* intentionally does not disclose material information regarding a conflict of interest and benefits financially, then that official has deprived the public of its right to his honest services.") (emphasis added). It also declined to charge the jury that it had to find either one of the objects unanimously. *Consiglio* slip op. at 3. A jury convicted Coniglio of five honest services fraud charges. It was not asked to return a special verdict indicating the honest services fraud theory or theories on which it had convicted. *Id.* at 3-4.

While the case was on appeal, the Supreme Court issued *Skilling*, *supra*, which concluded that the honest services fraud statute did not extend to a scheme to conceal an undisclosed conflict of interest. 130 S. Ct. at 2932. In light of *Skilling*, the court of appeals reversed Coniglio's honest services mail fraud convictions in an unpublished decision, reasoning that it

2

was not clear beyond a reasonable doubt that the jury had not relied on the invalid concealed conflict of interest theory in convicting Coniglio. *Coniglio* Slip op. at 5-7. At the same time, the court of appeals affirmed a related extortion conviction, concluding that "some very significant amount" of the evidence of concealment admitted at trial was also relevant to this extortion scheme. *Id.* at 7-9.

## II. This Jury Was Instructed Only On A Valid Theory of Bribery.

As the foregoing makes clear, the central problem in *Coniglio* was that the jury was instructed on *two* separate theories, one of which was invalid in light of *Skilling*. No such problem exists here. To the contrary, this Court's instructions repeatedly and exclusively defined the "duty of honest services" in terms of "bribery."[1] At no point was the jury told that it could convict the defendants on any other basis. In particular, the jury was *not* told that the

---

[1] For more than a dozen such references in the jury instructions, see Trial Tr. 4750 ("That is, by honest services, [the verdict form] refers to violation of the bribery laws of the state of Mississippi."); *ibid.* ("So then you can fix it in your mind that when you see honest services, that you know we are talking about an alleged violation of the bribery laws of the State of Mississippi."); *id.* at 4750, 4752 (making clear that "deprivation of honest services" is "through bribery"); *id.* at 4770 ("This deprivation of honest services owed to the State of Mississippi refers to the bribery laws of the State of Mississippi."); *ibid.* ("And this honest services reference that's owed to the state of Mississippi refers to the bribery laws of the state of Mississippi."); *id.* at 4770-71 ("In order to prove the scheme to defraud another of honest services through bribery, * * * "); *id.* at 4771 ("If the particular judge acted in a particular circumstance based on his honest views, not corrupted by a bribe, his actions do not constitute a deprivation of honest services under the mail and wire fraud statutes."); *id.* at 4772 ("In order to deprive the State of Mississippi of their honest services, defendants John W. Whitfield and Walter W. "Wes" Teel must have owed the State of Mississippi a duty that is defined by the bribery laws of the State of Mississippi and must have violated that duty."); *id.* at 4776 ("And you also remember that when we talked about honest services, we're referring to bribery laws of the State of Mississippi."); *ibid.* ("The deprivation of honest services refers to an alleged violation of the bribery laws of the State of Mississippi."); *ibid.* ("Therefore under this first element, the government must prove that the defendant knowingly devised or participated in a scheme to violate the bribery laws of the State of Mississippi."); *id.* at 4790 ("specific intent to violate the law" defined as "specific intent to take a bribe").

concealment of an undisclosed conflict of interest provided an alternative basis for liability. In fact, this Court specifically instructed the jury that the judicial defendants' failure to disclose monies received from Minor on their statements of economic interest was *not*, standing alone, a basis for conviction:

> The government relies upon such proof [*i.e.*, the failure to disclose the "loans"] to support its allegation that the defendant violated *the laws pertaining to bribery*. *Proof that a defendant failed to comply with the directives of a statement of economic interest, standing alone, is not proof that a federal law has been violated.*" Trial Tr. 4793 (emphasis added).

Accordingly, the result in *Coniglio* has no bearing on Minor's motion to vacate (assuming *arguendo* that the motion is properly before the Court).

### III.     The Government's Closing Arguments Did Not Invite the Jury to Convict on A Concealment Theory.

As Minor notes in his latest pleading, Minor Supp. at 3, the measures the defendants took to conceal their bribery scheme were relevant for at least two reasons. First, the concealment was central to the scheme -- without it, Whitfield and Teel would have been in no position to render favorable decisions to Minor's clients in exchange for his bribes. Second, the concealment supplied proof of the defendants' guilty knowledge that they were engaging in a bribery scheme. Minor Supp. at 3 (citing Gov't C.A. Br. at 11-12 in *United States v. Whitfield*, 590 F.3d 325 (5th Cir. 2009)); *see also Coniglio*, slip op at 8-9 (evidence of concealment helped to prove consciousness of guilt on extortion count).

Accordingly, the government referred to defendants' numerous acts of concealment in its closing arguments. But contrary to Minor's suggestion, Minor Supp. at 3 n.1, the government did not tell the jury that it could convict on the basis of concealment if it did not find bribery.

4

Instead, it argued only that the defendants' acts of concealment were probative of their intent to engage in bribery:

> And as Ms. Morgan told you during opening statements, this case is about subtle deception and concealment. This case is about corruption, corruption of the judicial system, specifically the judicial system on the Mississippi Gulf Coast and the question here is whether Paul Minor corruptly gave and whether Wes Teel and John Whitfield corruptly received things of value and money, and specifically did -- did they give and receive these things in return for favorable treatment on cases. So did they do it? Absolutely. And you now have the evidence that shows that they did it, the evidence that shows to you how they did it. And how they did it tells you why this did it. Why they did it is just a different way of saying their intent. So if you look at the way that they went about this scheme, then you can see clearly from the evidence that this was a corrupt bargain. This was a corrupt scheme. * * *

Trial Tr. 4797-98.[2]

Indeed, at trial Minor clearly understood the government's closing argument to be alleging a bribery scheme, and responded on this basis. He told the jury: "But if you look at those 14 count indictments and what the judge instructed you, *every count they have to prove bribery. As Mr. Fulcher said yesterday, they have to prove that he did it in exchange for those cases pending*." Tr. 4920 (Minor closing); *see also id.* at 4928 ("[The government said] they are going to prove they hatched a scheme to bribe these judges.") (Minor closing); *see also id.* at 4864 ("The government has tried to tell you this case was about bought and paid for judges.") (Teel Closing); *id.* at 4865 ("But this case boils down to a simple question. And that question is, has the government proven beyond a reasonable doubt that Paul Minor bribed Wes Teel?"); *id.* at 4873 (arguing that the jury must find "corruptness or bribery" "with respect to every count in this indictment or else you're not guilty verdict stands.") (Whitfield Closing). Accordingly, even if

---

[2] Minor cites only the first sentence of this passage without disclosing the broader context in which the remark about "concealment" was made. Minor Supp. at 3.

Minor could now raise a new objection to the government's closing argument (he cannot), that objection would lack any merit.

### IV. The Indictment Clearly Alleged A Bribery Scheme.

Minor also repeats his claim that the indictment in this case did not allege a bribery theory but instead relied on other theories of honest services liability, such as "concealment" or "self-dealing." Minor Supp. 3-4. As we have previously argued, (1) it is far too late to mount an attack on the indictment in this case; and (2) Minor's new theory entirely disavows his prior concessions in this case. Minor C.A. Br. 20-21, in <u>United States v. Whitfield</u>, 590 F.3d 325 (5th Cir. 2009) (bribery theory is "at the core" of every count of the indictment); *see also* Trial Tr. 4712-13 (Whitfield's counsel says "And the indictment in this case charges elements that an offer was made and that favors were given in exchange for that. The indictment is a quid pro quo indictment.").

In any event, Minor's claims regarding the indictment are wrong. As to each of the remaining counts of conviction, the indictment alleged a bribery offense:

* Count One (Minor/Whitfield conspiracy) alleged that "[i]t was the object of the conspiracy for defendant **PAUL S. MINOR** to provide things of value * * * to his co-conspirator **JOHN H. WHITFIELD** in return for favorable treatment in and relating to lawsuits that defendant **MINOR** had before **WHITFIELD** in his capacity as state court judge, thus gaining an unfair advantage in those lawsuits." Third Superceding Indictment at 4.

* Count Three (RICO) alleged "[i]t was a purpose of the racketeering activity for Defendant **MINOR** to use Minor and Associates to unlawfully obtain an advantage in matters before Mississippi state judges;" and that "[i]n return for providing loan guarantees and money, Defendant **MINOR** sought and received favorable treatment in matters before JOHN H. WHITFIELD and WALTER W. 'WES' TEEL." *Id.* at 16.

- \*  Counts Four through Seven (Honest Services Fraud) alleged that "[t]he purpose of the scheme was for defendant **MINOR** to provide things of value to defendant **WHITFIELD** to cause defendant **WHITFIELD** to abuse his position as judge and misuse his official authority to provide **MINOR** with an unfair advantage in matters before defendant **WHITFIELD**." *Id.* at 22.

- \*  Count Eight (Honest Services Fraud) alleged that "the purpose of the scheme was for defendant **MINOR** to conceal the source of the payment of funds by defendant **MINOR** through Intermediary #1 on behalf of JOHN H. WHITFIELD and to conceal the scheme for JOHN H. WHITFIELD to abuse his position as judge and misuse his official authority to provide defendant **MINOR** with an unfair advantage in matters before JOHN H. WHITFIELD." *Id.* at 25.[3]

- \*  Counts Nine and Ten (Honest Services Fraud) alleged that "the purpose of the scheme was for defendant **MINOR** to provide things of value to defendant **TEEL** to cause defendant **TEEL** to abuse his position as judge and misuse his official authority to provide defendant **MINOR** with an unfair advantage in matters before defendant **TEEL**." *Id.* at 26-28.

Accordingly, the indictment in this case undeniably alleged a bribery scheme.

### V.  Minor's Failure to Request or Obtain a GVR in Light of *Skilling* Provides an Additional Basis on Which to Decline to Hear His Motion.

As the government noted in its opposition to Minor's motion and at the related oral argument, Minor has failed to identify any procedural vehicle that would permit this Court to hear his *Skilling* challenge to his convictions at this stage of the proceedings. But assuming *arguendo* that the Court has discretion to hear that claim, it should decline to exercise it here

---

[3]  Contrary to Minor's apparent suggestion (Minor Supp. at 4), Count Eight was the only count that alleged "concealment" as a "purpose" (as opposed to a "manner and means") of the scheme. And the concealment alleged in that count was not an undisclosed conflict of interest, but the bribery scheme between Minor and Whitfield. Moreover, this Court's instructions on Count Eight made clear that to convict on this count (as on all other counts), proof of an intent to engage in a bribery scheme was required: "Therefore, under this first element, the government must prove that the defendant knowingly devised or participated in a scheme to violate the bribery laws of the State of Mississippi." Tr. 4776; *see also ibid.* ("And you also remember that when we talked about honest services, we're referring to bribery laws of the State of Mississippi.").

given Minor's failure to request or receive a remand from the Supreme Court in light of *Skilling*.

Minor suggests that this Court should hear his claim because the government argued in its certiorari petition that "[Supreme Court] review is unwarranted at this time because the court of appeals vacated petitioner's sentences and remanded to the district court for resentencing, so the case is still in an interlocutory posture." Br. for the United States in Opp., *Minor v. United States*, S. Ct. No. 09-1422, 2010 WL 3454167 at *7. This argument makes no sense. Whether the Supreme Court should wait until after re-sentencing before considering Minor's challenges to his convictions has no bearing on whether Minor can challenge those convictions at his re-sentencing in the district court after they have already been affirmed on appeal.

Nor does the existence of a re-sentencing proceeding diminish in any way the significance of the fact that this case has *not* been remanded by the Supreme Court for reconsideration in light of *Skilling*. Minor appears to suggests that such a remand is unnecessary, given the pre-existing sentencing remand. But Minor has failed to cite any authority for the proposition that a district court has the authority to reconsider convictions already affirmed on appeal as part of a sentencing remand. Moreover, the *Siegelman* litigation disproves any suggestion that a GVR is either inappropriate or unavailable when a sentencing remand is contemplated. In that case, as here, the court of appeals affirmed several of Siegelman's convictions but remanded for a re-sentencing. *United States v. Siegelman*, 561 F.3d 1215 (11th Cir. 2009). After petitioning the Supreme Court for a writ of certiorari, Siegelman requested that his petition be held pending the resolution of *Skilling*. Reply Br. for Pet., *Siegelman v. United States*, 2009 WL 4030676 at *6 n.2. Three business days after *Skilling* was decided, the Supreme Court vacated the judgment in *Siegelman* and remanded to the Eleventh Circuit for reconsideration in light of *Skilling*. 130 S.

Ct. 3542, a remedy *not* afforded to the defendants here.  The Supreme Court's action in *Siegelman* plainly demonstrates that the existence of a sentencing remand to the district court is in no way inconsistent with a GVR proceeding in the court of appeals.

## CONCLUSION

For these reasons, as well as for the reasons set forth in the Government's Opposition to Minor's Motion to Vacate and at the oral argument on that motion, the Motion to Vacate should be denied.

Respectfully submitted,<br>
Jack Smith<br>
Chief, Public Integrity Section<br>
Criminal Division<br>
U.S. Dept. Of Justice

By:  */s/ Dave Fulcher*

| | |
|---|---|
| Ruth R. Morgan | David H. Fulcher |
| Assistant U.S. Attorney | Assistant U.S. Attorney |
| 1575 20th Avenue | 188 E. Capitol Street, Suite 500 |
| Gulfport, MS 39501 | Jackson, MS 39201 |
| 228-563-1560 | 601-965-4480 |
| MSB# 1996 | MSB # 10179 |

Elizabeth D. Collery
Attorney, Appellate Section
Criminal Division
U. S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
(202) 353-3891

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

This the 17th day of March, 2011.

<i>/s/ Dave Fulcher</i><br>
David H. Fulcher<br>
Assistant U.S. Attorney