UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**PAUL S. MINOR** | **Criminal Docket No. 3:03cr120-HTW-JCS** |

**DEFENDANT PAUL S. MINOR'S REPLY TO GOVERNMENT'S SUPPLEMENTAL RESPONSE OPPOSING MOTION TO VACATE**

The government, once again, ignores the long line of Supreme Court precedent that places the burden squarely on the shoulders of *prosecutors* to prove beyond a reasonable doubt that the jury did not rely on one of the legally invalid theories of guilt that the government made available to it. *See Chapman v. California*, 386 U.S. 18, 24 (1967).

The government cannot possibly meet its heavy burden by endlessly retreating to the position that the jury surely could have understood "corrupt agreement" to be shorthand for *quid pro quo* bribery. The government misses the point. Even assuming, contrary to precedent, that one part of the jury instructions conveyed that concept, several other parts of the instructions—including that there need not be "mutual intent"; that "[i]t is not necessary that the government prove all the details alleged in the indictment concerning the precise nature and purpose of the scheme"; that the scheme *charged* was one of "deceit, bias, self-dealing and concealment"; and that the scheme need only be "substantially the same" as the one charged (Trial Tr. 4772-73)—all gave the jury avenues to convict for conduct that is *not* bribery within the narrower compass

dictated by *Skilling*.[1]  *See, e.g., United States v. Marcello*, 876 F.2d 1147, 1151 (5th Cir. 1989) (reversing honest-services fraud conviction because, although the jury instructions "summarized the scheme as one 'to defraud Louisiana citizens by illegally obtaining state insurance contracts through the bribery of public officials' and contained no reference to the defrauding of the citizens of non-property rights," the instructions also informed the jury that the scheme was "'substantially the same as the one alleged in the indictment,'" which "pointedly charged" an honest-services deprivation).  Just as in the Third Circuit case of *United States v. Coniglio*, Mr. Minor's jury was allowed to convict him for something other than *quid pro quo* bribery.[2]

At least the government agrees, albeit for the wrong reasons, that the recent *Skilling* decision in the Fifth Circuit "has no direct bearing on this case."  D.E. 843, Government

---

[1]  For example, the government cannot get around the fact that its no-need-for mutual-intent instruction meant that the jury could convict even if Mr. Minor and his co-defendants did *not* mutually intend for a payment to be in exchange for unlawful performance of official acts.  By admitting as much on appeal, the government agrees that the jury did not need to find a true *quid pro quo* as required by *Skilling*'s federal-law-only holding.  *See* Gov't Br. at 53 (stating that the instruction allowed Mr. Minor to be convicted "even if his offer" is not the same as what the accepter "accepted").

[2]  There were, of course, many other opportunities in the instructions for the jury to convict of something else.  *See*, *e.g.*, Trial Tr. 4778 (instructing that the scheme charged was to deprive the State of Mississippi of "its intangible right of honest services of [Teel] performed free from deceit, bias, self-dealing and concealment"); Trial Tr. 4777 ("An intent to defraud means an intent to deceive or cheat someone. A representation is false if it is known to be untrue or is made with reckless indifference as to its truth or falsity. A representation would also be false when it constitutes a half truth or effectively omits or conceals a material fact provided it's made with intent to defraud."); Trial Tr. 4790 ("You may find specific criminal intent even though you may find that the rulings were legal and correct; that the official conduct would have been done anyway; that the official conduct sought to be influenced was lawful and required by law; and that the official conduct was desirable or beneficial to the public welfare."); Trial Tr. 4791-92 (instructing that "[c]ertain aspects of this case are controlled by the laws of the State of Mississippi that have recently been changed or otherwise amended," including laws governing "judicial elections" and "campaign finance," "written disclosures" required under "state ethics laws," and "state laws" governing the differences between "loans" and "income").

2

Supplemental Response at 2 (citing *United States v. Skilling*, 2011 WL 1290805 (5th Cir. 2011)). As we noted earlier, that opinion contains a fact-intensive harmless-error analysis in a case where traditional (*i.e.*, money or property) fraud served as an adjunct to each honest-services fraud allegation and also was the subject of several separate convictions for securities fraud, in counts that had no honest-services fraud theory. Thus, although Mr. Minor contends that the "impossible-to-tell" component of harmless-error review in *Yates v. United States*, 354 U.S. 298 (1957) is still good law, and that overwhelming evidence on a disputed element of a valid theory does not suffice to meet the government's burden, *cf. Skilling*, 2011 WL 1290805 at n.1, his conviction must be reversed under *Skilling*. The government has not even tried to show that the needed evidence of *quid pro quo* bribery was "overwhelming." Nor could it have come anywhere close had it tried, because there is no proof—only surmise—that any official action was taken in return, or in exchange, for any payment. To this day, the government has not even been able to assert *which* official action the jury or this Court should have looked to for the first half of even one alleged illicit exchange.

  The government cannot escape its burden with untested assurances that it would be able to make the required showing if only it thought it was important enough to try. *See* D.E. 843 at 3 (declining to explain how it would meet its burden to prove harmlessness, because, while *Skilling* would be relevant had the jury been given an alternative theory, the government still insists that it had no other theories). Nor does the government's discredited waiver argument excuse it from making the effort. We have already explained that because it is *the government's* job (and not the defendant's) to decide what charges to bring—and because the government invoked state law when it charged the honest-services fraud counts in this case—Mr. Minor cannot be faulted for defending himself within the government's chosen construct. It would be one thing if Mr. Minor

3

now complained about a Mississippi-law instruction that he requested. That has never been his argument. He seeks, and is entitled to, reversal because the government convinced this Court *not* to give Mr. Minor's requested instructions, which would have supplemented the government's Mississippi-law-version with required federal-law-based findings that the Supreme Court has now confirmed are necessary.[3] The effort to blame Mr. Minor for government-sponsored instructional error is as spurious as the related claim that, by trying on appeal to hold the government to its representations that a proper conviction could only be had for bribery, Mr. Minor somehow forfeited his argument that the government failed to live up to that promise. *See*, *e.g.*, Hearing Tr. Mar. 11, 2011 at 32-33 (government claims that, because Mr. Minor argued to the Fifth Circuit that the only proper basis for his conviction would be *quid pro quo* bribery, he cannot complain that the indictment and instructions failed to present the jury that theory and no others).

Finally, it is worth noting what the government chose not to contest:

- The government's position in the Second Circuit in *Bruno* (confessing error because a "new legal standard announced in *Skilling*" for honest-services fraud now requires proof of *quid pro quo* bribery) demonstrates that *Skilling* is far from "barely even relevant to this case, if it's relevant at all." *See* D.E. 842 at 1-2.

- The case for reversal here is at least as compelling as it was in *Bruno*, because in *Bruno* "[t]he issue of whether there was a *quid pro quo* permeated the trial," and "[s]ome of the jury instructions highlighted factors that would be relevant in determining whether there

---

[3] The government has no excuse for ignoring the language of Mr. Minor's requested instructions, including one titled "Bribery, Explanatory Instruction," which he requested so that the jury might understand that a payment is "corrupt" within the meaning of the instructions, only if part of the "specific quid pro quo for the official to engage in a specific official act in exchange for the thing of value." Proposed Defense Instruction 18; *see also* Proposed Instructions 12 & 13 (including instructions tailored to, among other things, campaign contributions). It is therefore no surprise that the Fifth Circuit already gave the government's *same* waiver argument zero credence, and the argument has not improved with age.

4

was a *quid pro quo*." D.E. 842 at 2-3.  Here, the government not only argued its core theory of concealment dozens of times in summation, that theory was the lead-off point.

- The no-mutual-intent-needed instruction allowed the jury to convict without finding a *quid pro quo*, regardless of whether other aspects of the instruction suggested that element.  D.E. 842 at 4 n.3.

- Not only has the government previously acquiesced in motions to vacate based on intervening Supreme Court authority where the motion is brought before final judgment, the government itself has *made* those motions without any hint of the need for a special rule addressing the case's unusual posture (for example, it has made motions to vacate between sentencing and consideration of the case on appeal).  D.E. 842 at 5-6.

The government has failed to establish that the jury did not convict for something that isn't a crime.  The time has come to halt the government's never-ending efforts to evade the issues that actually matter in this motion, and to vacate each count of conviction.

Dated:  April 15, 2011

Respectfully submitted,

Theodore B. Olson,
   *admitted pro hac vice*
David Debold,
   *admitted pro hac vice*
Gibson, Dunn & Crutcher LLP
1050 Connecticut Ave., NW
Washington, DC  20036
Office:  202-955-8500
Fax:  202-467-0539
email:  TOlson@gibsondunn.com
email:  DDebold@gibsondunn.com

 /s  Chuck McRae
Chuck McRae, MSB #2804
416 East Amite Street
Jackson, MS  39201
Office:  601-944-1008
Fax:  866-236-7731
email:  chuck@msjustice.net

***Attorneys for Defendant Paul S. Minor***

## CERTIFICATE OF SERVICE

    I, Chuck McRae, do hereby certify that on April 15, 2011, I served the above and foregoing pleading via the Court's ECF filing system, which sent notification of this filing to all counsel of record.

  s/ Chuck McRae  
Chuck McRae, MSB #2804  
416 East Amite Street  
Jackson, MS  39201  
Office:  601-944-1008  
Fax:  866-236-7731  
email:  chuck@msjustice.net